Mauck, J.
This is an action to enjoin the holding of an election at which it is sought by referendum proceedings to submit to the electors of the city of Ironton, for their approval or rejection, an ordinance affecting the contractual relations of the plaintiff herein in its operation of a street railway in that city. The question at issue is whether or not those seeking the referendum have complied with the requirements necessary to secure the same. The petitioning electors filed with the city auditor a petition which contained the number and title. *399 of said ordinance, and was signed by a sufficient number of electors to secure the desired referendum. Attached to the petition was the following verified statement:

“The State of Ohio, Lawrence county, ss:

“Before me, the undersigned notary public within and for said county, personally appeared Thomas L. Collett, who being duly sworn declared that he is an elector of the City of Ironton, Ohio; that he signed the foregoing petition; that he saw the several persons whose names are signed to said petition sign the same, and that all of said names were signed in his presence; that he verily believes that all of the persons whose names are signed to said petition are electors of said City of Ironton.”
The governing statute under which this petition is- filed, and by which must be determined the sufficiency of the steps taken by the petitioners, is Section 4227-4, General Code, which in part reads as follows:
“Each part of such petition shall contain the affidavit of the person soliciting the signatures to the same, which affidavit shall contain a statement of the number of signers of such part of such petition and shall state that to the best of his knowledge and belief each of the signatures contained on such part is the genuine signature of the person whose name it purports to be, and believes that such persons are electors of the municipal corporation and that they signed such petition with knowledge of the contents thereof.”
*400 It is apparent that the affidavit above quoted is not in exact compliance with the statute, in that it does not show that the petitioners “signed such petition with knowledge of the contents thereof.”' The difference between the affidavit made and the requirements of the statute seems slight, and is, confessedly, technical. But the question is not to be disposed of by describing it as technical. If the general assembly has prescribed a condition that must be fully complied with before a referendum is had the proyince of the court is limited to ascertaining whether that condition has been met. The legislative power of a city is primarily vested in the city council. (Section 4206, General Code.) An ordinance duly passed by the council becomes effective thirty days after its passage. (Section 4227-2, General Code.) Such legislative act is nullified, if, upon a referendum, it fails to be approved by a majority of the electors voting thereon. Care was taken by the general assembly, as will be hereafter pointed out, to protect the voice of a majority, once an election is had, from being stifled by technical objections. The power and rights of a majority duly expressed at an election, however, are not to be confused with the power, and rights of a minority seeking an election.. It is not a majority, but ten per cent, of the voting population that calls a referendum. This minority of one-tenth of the: voters, by the filing.of a proper petition, suspends the legislative action of the council until the next regular election. That is, this minority is given the power to suspend the legislative power of the council, representing all the people, for a period as' short as forty days or as long as thirteen months *401 and more. This extraordinary power, given so small a proportion of the voting public, it would seem, is not to be exercised by it except by a full and strict compliance with the statute from which that power is derived. It is a grant of a special right to the minority and can not be enlarged by construction.
“Where a statute confers a new right, privilege or immunity the grant is strictly construed, and the mode prescribed for its acquisition, preservation, enforcement and enjoyment is mandatory.” 2 Sutherland on Statutory Construction (2 ed.), 1142, Section 632.
“Every provision of the Constitution as to initiative and referendum is mandatory, and requires that every safeguard against irregular and fraudulent exercise be carefully maintained.
“A referendum petition must bear the affidavit of the circulating solicitor, who by implication must be an elector of the county in which he circulated the section [or part of a petition], and signatures must be excluded unless the affidavit affirmatively shows that he was such an elector.” Thompson v. Vaughan, Secretary of State, 159 N. W. Rep., 65 (192 Mich., 512).
The history of the statute justifies the view above suggested. The first act providing for a referendum in municipal legislation was passed in 1911, 102 Ohio Laws, 521. This act did not contain the restrictive features quoted above, and no reason is now apparent why the petition filed with the city auditor in this proceeding would not have been sufficient in form under the law of 1911. In 1913, *402 however, the general assembly saw fit to revise the whole statute providing for and regulating the municipal initiative and referendum. This was not required by the constitutional amendment of 1912, but was occasioned by it. Now an amendatory act is construed by a definite rule. It is presumed that when the general assembly deliberately alters an existing statutory provision it thereby expressly declares that a different rule of action is to prevail. In this case it found that the then existing law did not compel those seeking a referendum to file an affidavit showing that those signing the petition did so with knowledge of its contents. The general assembly, seeking to protect the public from the filing of ill-considered petitions, after two years experience, inserted this provision. And we are bound to assume that it did so with the intention of having this and all the other newly prescribed conditions complied with before the legislative powers of the city could be suspended.
“The presumption is, that every amendment of a statute is made to effect some purpose.” Lytle v. Baldinger, 84 Ohio St., 1, 8.
“The old law should be considered, the evils arising under it, and the remedy provided by the amendment, and that construction of the amended act should be adopted which will best repress the evils and advance the remedy. * * * It will be presumed that the legislature, in adopting the amendment, intended to make some change in the existing law, and therefore the courts will endeavor to give some effect to the amendment.” 36 Cyc., 1165,
*403 Section 1/, Article II of the Constitution, provides that the powers of the initiative and referendum reserved to a municipality shall be exercised in the manner provided by law. “By law” means by statute law, in this and the accompanying sections of the constitution. The referendum in question is, therefore, not governed by the constitutional provisions to which we have been cited, but by the statute above referred to. The constitutional provisions are, however, of significance. The amended act for a municipal referendum was passed after the constitutional amendment providing for a referendum of state legislation was adopted. It was deemed undesirable in adopting the constitutional provision that state legislation should be suspended and a referendum had by securing the casual signatures of voters unacquainted with the purport and possible efifect of the proposed referendum. This was deemed so important that it was not left to mere statute, nor was it left to be determined by the courts upon extrinsic evidence that the voters were correctly advised of the object of the proposed referendum. It was written in the constitution itself that one of the conditions precedent to an election was that there be attached to the petition an affidavit stating, inter alia, the belief of the affiant that each signing elector so “signed said petition with knowledge of the contents thereof.” (Section 1 g, Article II, Constitution.) This provision, we think, has both by analogy and by direct pronouncement of the supreme court been determined to be mandatory.
In State, ex rel. Gongwer, v. Graves, Secretary of State, 90 Ohio St., 311, the supreme court was *404 considéring the section of the constitution above referred to. A petition had been filed containing some genuine and some fraudulent signatures. The affidavit was regular in form. A liberal construction of the provision would have required that the undoubtedly genuine signatures be given consideration. The court did not, however, take that-view, but said that the efficiency of the petition depended upon the affidavit containing certain specified things, among them being a statement that the signers of the petition had knowledge of its contents. The court said at page 322:
“These petitions and each separate part thereof depend for their efficiency and their validity upon the affidavit of the circulator that each of the signatures attached to such part was made in the presence of affiant; that to the best of his knowledge and belief it is the signature of the person it purports to be; that he believes the person who signed it to be an elector; that he signed the petition with knowledge of the contents thereof; that each signer signed the same on the date set opposite his name.”
Another of the terms of Section 1 g, Article II of the Constitution, is that the names of signers to a petition for a state referendum shall be written in ink. We can not say that that provision is mandatory, and then say that the provision requiring the affidavit to show that the signers of the petition signed with knowledge of its contents is not mandatory. The two requirements are pari materia and evidently of equal dignity.' Now how does the supreme court treat the requirement that on a statewide referendum the signatures shall be written- in ink? We think the answer to that is found in *405 State, ex rel. Smith, v. Lloyd, 93 Ohio St., 20. In that case the charter of the city of Columbus required that “each signer to a petition shall sign his name in ink or indelible pencil.” If a provision of that character in the charter of the city of Columbus was mandatory, such a provision in the Constitution of Ohio ought to be of an equally imperative nature. So it is interesting to observe that at page 21 of the opinion the supreme court said of this provision in the Columbus charter:
“Such provision controls and that requirement must be regarded as mandatory, and therefore signatures not in compliance therewith need not be and should not be considered or counted in determining the sufficiency of a nominating petition.'”
This case, of course, is not cited for the purpose of saying that the petition in the instant case should have been signed only in ink, but it is cited for the purpose of showing the significance given by the supreme court to provisions of the same character as that involved in the case at bar.
When, therefore, in 1914, the general assembly, charged with the duty of safeguarding the municipal referendum, observed the restrictions on the exercise of the state-wide referendum placed in the constitution by the people themselves, it concluded to change the law governing the municipal referendum by placing similar provisions in the statute governing the same. It thereupon wrote some, but not all, of those safeguarding constitutional provisions into this statute, and among others so taken from the state constitution was the provision in question in this case. In our opinion there is no doubt that the effect intended, and the effect accom *406 plished, was to make this provision as mandatory on a municipal referendum as was the identical constitutional provision on a state-wide referendum. This view is borne out by a further provision in the statute.
The section of the constitution above referred to recognized that there was a difference between the rights of a majority as expressed at an election and the rights of a minority to secure such an election. It accordingly provided that after a favorable vote at an election an insufficiency in the petition should be treated as inconsequential. The constitution thus drew its own distinction between the times when a provision should be mandatory and when not. So long as a minority sought to suspend legislation and secure an election the conditions precedent must be fully met. If, however, the sufficiency of the petition be not challenged, and the election held, then, the majority having spoken, the result is not to be impeached by any irregularity in the proceedings designed to obtain that election. This identical provision was borrowed from the constitution by the general assembly and placed in the governing statute. The provision in the statute reads:
“No ordinance or other measure submitted to the electors of any municipal corporation and receiving an affirmative majority of the votes cast thereon, shall be held ineffective or void on account of the insufficiency of the petitions by which such submission of the same shall have been procured, nor shall the rejection by a majority of the votes cast thereon, of any ordinance or other measure, submitted to the *407 electors of such municipal corporation, be held invalid for such insufficiency.”
Why did the general assembly pass this amendatory act? If these conditions precedent had been directory only there would have been no occasion to have protected the election from the kind of attack contemplated in the provision just quoted. The general assembly passed this amendatory provision because it desired to indicate the time when a failure to comply with the governing statute had been waived, and when the legislation had proceeded to a point where technicalities could no longer be invoked. By thus prescribing when objections to petitions could no longer be effective, it indicated, conversely, when they would be effective. By specifically making the referendum impregnable after election it left it open to assault before election.
It follows, therefore, that the petition filed with the auditor in this case was insufficient because the accompanying affidavit did not show that the signers to such petition signed the same with knowledge of the contents thereof, that this provision is jurisdictional, and that the omission can not be supplied by extrinsic evidence and the court has no power to hear such evidence.
The prayer of the petition is, therefore, granted.
Sayre and Middleton, JJ., concur.