[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 137.]

TAYLOR ET AL., APPELLANTS, *v.* CITY OF LONDON, APPELLEE, ET AL.

[Cite as *Taylor v. London*, 2000-Ohio-278.]

*Municipal corporations—Annexation—Enactment of emergency legislation accepting an application for annexation of real estate is not prohibited by R.C. 709.10 or Section 1f, Article II of the Ohio Constitution—Emergency legislation adopted by municipality not subject to referendum.*

1.     The enactment of emergency legislation by a municipality accepting an application for annexation of real estate is not prohibited by R.C. 709.10 or Section 1f, Article II of the Ohio Constitution.

2.     In accordance with R.C. 731.29 and 731.30, emergency legislation adopted by a municipality is not subject to referendum.

(No. 99-411—Submitted November 17, 1999—Decided March 1, 2000.)

APPEAL from the Court of Appeals for Madison County, No. CA98-06-024.

———————————

{¶ 1} On March 27, 1998, Janice E. and Robert V. Taylor, appellants, filed a complaint in the Madison County Court of Common Pleas naming as defendant the city of London, appellee herein.[1]  Appellants based their complaint on the following allegations.

{¶ 2} On July 7, 1997, the Madison County Board of Commissioners ("commissioners") held a hearing and thereafter approved a petition for annexation of approximately five hundred twenty-nine acres in Union and Deercreek Townships ("Parcel A") to the city of London.  In addition, on August 11, 1997,

———————————

1. Betty D. Montgomery, Attorney General of Ohio, was named as a party defendant pursuant to R.C. 2721.12 but was dismissed as a party after the parties stipulated that the state had no interest or stake in the litigation.

the commissioners held a hearing and also subsequently approved a petition for annexation of approximately two hundred sixty acres in Union Township ("Parcel B") to the city of London. Following certification to the city auditor, the London City Council ("city council") passed two ordinances, Ordinance Nos. 230-97 (Parcel A) and 229-97 (Parcel B), accepting both applications for annexation.

{¶ 3} On February 17, 1998, appellants filed referendum petitions, requesting that, at the next general election, Ordinance Nos. 230-97 and 229-97 be placed on the ballot for approval or rejection by the city electorate.[2] In response to the petitions, city council, on February 19, 1998, passed four emergency ordinances. Two of the enacted emergency ordinances repealed Ordinance Nos. 230-97 and 229-97. The other two emergency ordinances (Ordinance Nos. 136-98 and 138-98) accepted the applications for annexation of each parcel to the city of London.[3] In the emergency ordinances, city council set forth its reasons for the passage of the legislation and specifically noted that the legislation was "for the immediate preservation of the public peace, health and safety of the inhabitants of the City of London."

---

2. Appellants were members of the referendum committee and are therefore regarded as having filed the petition. R.C. 731.34.

3. Appellants concede that municipalities are not prohibited from circumventing a referendum by "passing at one session after the filing of the referendum petition two consecutive emergency ordinances, one to repeal the ordinance under referendum and the other to re-enact substantially the same ordinance as repealed; and it can do that although the sole purpose of council in passing the two new ordinances is to prevent a vote by the electorate on the legislation contained in the ordinance with respect to which the referendum petition was filed." *State ex rel. Tester v. Ottawa Cty. Bd. of Elections* (1962), 174 Ohio St. 15, 21 O.O.2d 107, 185 N.E.2d 762, syllabus.

 Moreover, the duty and responsibility of determining the emergency are placed in the council of a municipality and "[i]f there was in fact no emergency or if the reasons given for such necessity are not valid reasons, the voters have an opportunity to take appropriate action in the subsequent election of their representatives. However, the existence of an emergency or the soundness of such reasons is subject to review only by the voters at such a subsequent election of their representatives. They are not subject to review by the courts." *State ex rel. Fostoria v. King* (1950), 154 Ohio St. 213, 221, 43 O.O. 1, 4-5, 94 N.E.2d 697, 701, and paragraph four of the syllabus. As noted in *Fostoria*, the statutory provisions safeguard referendum rights by requiring substantially more than a majority vote to enact emergency legislation. *Id.* at 220, 43 O.O. at 4, 94 N.E.2d at 701.

**{¶ 4}** In their complaint, appellants sought a declaration that the emergency ordinances accepting the annexation applications were contrary to law and therefore void. Appellants alleged that R.C. 709.10 and Section 1f, Article II of the Ohio Constitution "prohibit the passage as an emergency measure of an ordinance purporting to accept an annexation." On April 24, 1998, appellee filed a Civ.R. 12(B)(6) motion to dismiss the complaint for failure to state a claim upon which relief could be granted.

**{¶ 5}** The trial court granted appellee's motion and dismissed the complaint. Upon appeal, the court of appeals affirmed the judgment of the trial court. The court of appeals, however, did not address appellants' specific contentions concerning the application of R.C. 709.10 and Section 1f, Article II. Rather, the court of appeals affirmed the judgment of the trial court on the grounds that appellants' claims were moot.

**{¶ 6}** This cause is now before this court pursuant to the allowance of a discretionary appeal.

———————————

*Lucas, Prendergast, Albright, Gibson & Newman*, *Robert E. Albright* and *Jill S. Tangeman*, for appellants.

*Vorys, Sater, Seymour & Pease, L.L.P.*, and *Bruce L. Ingram*; and *Monte C. White*, London Law Director, for appellee.

*Barry M. Byron*, *Stephen L. Byron* and *John Gotherman*, urging affirmance for *amicus curiae* Ohio Municipal League.

*Porter, Wright, Morris & Arthur* and *John F. Marsh*, urging affirmance for *amici curiae* MTB Corp., Jerry Alcott, Norman Dunham, and DC Engineering & Development Ltd.

———————————

**DOUGLAS, J.**

{¶ 7} The issue before us is whether city council had the authority to enact emergency legislation accepting the applications for annexations of the two parcels of land to the city of London. For the reasons that follow, we answer this question in the affirmative.

{¶ 8} As a threshold matter, it is clear that we must, as a matter of law, accept all of the allegations of appellants' complaint as true. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 756. Further, in *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus, we held:

"In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ.R.12(B)(6)), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery."

{¶ 9} This case involves the annexation of land to a municipal corporation upon petition by a majority of the owners of real estate in the territory proposed for annexation. Ohio's statutory procedure for annexation is set forth in R.C. Chapter 709.

{¶ 10} R.C. 709.02 provides that owners of real estate adjacent to a municipal corporation may apply for such territory to be annexed by filing a petition with the board of county commissioners of the county in which the territory is located. Not less than sixty days after a petition for annexation is filed with the commissioners, the commissioners must hold a public hearing. R.C. 709.031 and 709.032.

{¶ 11} Following the evidentiary hearing, the commissioners must approve or deny the petition based upon factors contained in R.C. 709.033.[4] If the petition

---

4. R.C. 709.033 provides:

"After the hearing on a petition to annex, the board of county commissioners shall enter an order upon its journal allowing the annexation if it finds that:

"(A) The petition contains all matter required in section 709.02 of the Revised Code.

"(B) Notice has been published as required by section 709.031 of the Revised Code.

is approved, the commissioners must deliver the petition and a certified transcript of the proceedings to the auditor or clerk of the municipal corporation. R.C. 709.033. Thereafter, the auditor or clerk is required to present the petition and the transcript to the legislative authority of the municipal corporation. R.C. 709.04. The legislative authority then accepts or rejects the application for annexation by resolution or ordinance. *Id.*

{¶ 12} R.C. 709.07(A) provides that a person may file a petition in the court of common pleas for an injunction preventing the auditor or clerk from presenting the annexation petition and other papers to the legislative authority. The trial court may issue an injunction if the petitioner sets forth facts sufficient to demonstrate that, among other things, an error existed in the proceedings before the commissioners or that their decision was unreasonable or unlawful.

{¶ 13} The court of appeals did not address appellants' contentions that the emergency ordinances passed by city council on February 19, 1998 were contrary to law and therefore void. Instead, the court of appeals, relying on *Garverick v. Hoffman* (1970), 23 Ohio St.2d 74, 52 O.O.2d 371, 262 N.E.2d 695, and *State ex rel. Springfield Twp. Bd. of Trustees v. Davis* (1982), 2 Ohio St.3d 108, 2 OBR 658, 443 N.E.2d 166, held that appellants' contentions were moot because they failed to seek an injunction prior to the passage of the emergency ordinances.

{¶ 14} However, we believe that, given the procedural posture of the case at bar, the court of appeals' reliance on *Garverick* and *Davis* was misplaced. In both *Garverick* and *Davis*, this court noted that the parties challenging the

---

"(C) The persons whose names are subscribed to the petition are owners of real estate located in the territory in the petition, and as of the time the petition was filed with the board of county commissioners the number of valid signatures on the petition constituted a majority of the owners of real estate in the territory proposed to be annexed.

"(D) The municipal corporation to which the territory is proposed to be annexed has complied with division (B) of section 709.031 of the Revised Code.

"(E) The territory included in the annexation petition is not unreasonably large; the map or plat is accurate; and the general good of the territory sought to be annexed will be served if the annexation petition is granted."

legislation at issue accepting annexation failed to take advantage of available remedies to stay proceedings before the legislation was passed. Thus, because the parties in *Garverick* and *Davis* did not avail themselves of such remedies, any subsequent challenge seeking to enjoin the enacted legislation was moot.[5]

{¶ 15} However, the situation in the case at bar is substantially different from what occurred in both *Garverick* and *Davis*. Unlike the parties in *Garverick* or *Davis*, here, appellants clearly did not have an opportunity to seek an injunction prior to the adoption of the ordinance accepting annexation. This is true because the act of accepting the annexation by emergency ordinance is the very action that appellants are challenging.

{¶ 16} Appellants contend that R.C. 709.10 and Section 1f, Article II of the Ohio Constitution prohibit a municipality from accepting annexation applications through passage of emergency legislation. R.C. 709.10 sets forth the date that annexation takes effect after an ordinance accepting annexation is passed. Appellants contend that there is an irreconcilable conflict between R.C. 709.10 and language in R.C. 731.30 regarding the effective date of an emergency ordinance.

---

5. In *Garverick* this court stated that "every wrong decision, even by an administrative body, is not void as being beyond the so-called jurisdiction of the tribunal, even though voidable by proper judicial process. Logic compels the conclusion that this is true where a specifically prescribed course of immediate judicial review or judicial examination is provided within the same act, for the relief of those persons claimed to be aggrieved by illegal or improper action of an administrative tribunal, especially where such persons fail to take advantage of the specific judicial review or examination so provided. [Citation omitted.] That is the situation which prevailed in this case, and was the basis for the conclusion by the Court of Appeals that the case is moot. We agree with that conclusion." *Id.*, 23 Ohio St.2d at 79, 52 O.O.2d at 374, 262 N.E.2d at 699.

In *Davis* this court stated:

"We wish to emphasize that subsequent to the final order of the court of common pleas on April 21, 1982, until city council's enactment of the annexation ordinance on June 28, 1982, relators possessed several options. First, under Civ.R. 62(B), a stay was available upon request from the court of common pleas which would have prevented this cause from becoming moot. Second, a *timely* stay under the provisions of App.R. 7 could have been sought from the court of appeals. Neither course, however, was pursued despite the abundance of precedent which compels us to agree with the court of appeals that this action was rendered moot on June 28, 1982, the date city council adopted Ordinance No. 415-1982, accepting the annexation." (Emphasis *sic.*) *Id.*, 2 Ohio St.3d at 111, 2 OBR at 661, 443 N.E.2d at 168-169.

**{¶ 17}** R.C. 709.10 provides that "annexation shall become effective thirty days after the passage of the resolution or ordinance * * * accepting annexation, provided that if the resolution or ordinance is subjected to a referendum, the annexation, if approved by the electors, shall become effective thirty days after such approval." R.C. 731.30 provides that "emergency ordinances * * * shall go into immediate effect."

**{¶ 18}** Appellants claim that, because R.C. 709.10 expressly provides for a thirty-day delay between the date that an annexation ordinance is passed and the date that the annexation goes into effect, municipalities are prohibited from approving annexation applications by emergency ordinances because such legislation takes effect immediately in accordance with R.C. 731.30. In this regard, appellants contend that the General Assembly intended that R.C. 709.10 prohibit municipalities from circumventing referendums by accepting annexation applications by emergency ordinances. In support of their position, appellants rely on *Tamele v. Brinkman* (1972), 30 Ohio Misc. 49, 59 O.O.2d 292, 284 N.E.2d 210.

**{¶ 19}** In *Tamele*, the court determined that a conflict existed between R.C. 709.10 and 731.30 with respect to the effective date of the ordinance. The court determined that the conflict was irreconcilable and that R.C. 709.10, as a special provision relating to annexation, prevailed over R.C. 731.30, a general provision relating to ordinances. Thus, the court in *Tamele* held that R.C. 709.10 creates an exception to R.C. 731.30 and prevents municipalities from accepting annexation petitions by means of emergency ordinances.

**{¶ 20}** However, we agree with appellee that the *Tamele* court erred in finding that R.C. 709.10 and 731.30 are irreconcilable. We note that R.C. 1.51 provides that, when possible, courts should construe conflicting provisions so that effect is given to both. We find that R.C. 709.10 and 731.30 can coexist, *i.e.*, an emergency ordinance accepting annexation becomes effective immediately in

accordance with R.C. 731.30 but citizens living in the area annexed do not secure rights and privileges until thirty days thereafter in accordance with R.C. 709.10.

{¶ 21} Appellants contend that giving effect to both statutes would lead to absurd results because the sole reason that the General Assembly included the language in R.C. 709.10 providing for a thirty-day delay in the effectiveness of annexations was to provide time for filing referendum petitions. Appellants, however, overlook the fact that R.C. 709.10 also provides for a thirty-day delay in the effectiveness of an annexation if the referendum is exercised and the ordinance is accepted. Specifically, R.C. 709.10 provides that "if the resolution or ordinance is subjected to a referendum, the annexation, if approved by the electors, shall become effective thirty days after such approval." If the delay were intended simply to allow time for filing a referendum petition then there would be no need for a thirty-day delay once the voters approved the annexation.

{¶ 22} Therefore, we believe that the General Assembly had additional reasons for providing for a thirty-day delay in the effectiveness of annexations. We believe that the delay set forth in R.C. 709.10 provides time for the finalization of the annexation, see R.C. 709.06,[6] and also allows time for the municipality to arrange for extension of its services to the newly annexed area, *e.g*., garbage collection, police patrol, fire protection, water, and sewer.

{¶ 23} If the General Assembly had intended, as appellants suggest, to prohibit municipalities from passing annexation applications by means of

---

6. R.C. 709.06 provides:

"If the resolution or ordinance required by section 709.04 of the Revised Code is an acceptance of the proposed annexation, the auditor or clerk of the municipal corporation to which annexation is proposed shall make three copies, containing the petition, the map or plat accompanying the petition, a transcript of the proceedings of the board of county commissioners, and resolutions and ordinances in relation to the annexation, with a certificate to each copy that it is correct. Such certificate shall be signed by the auditor or clerk in his official capacity, and shall be authenticated by the seal of the municipal corporation if there is any. The auditor or clerk shall forthwith deliver one such copy to the county auditor and one such copy to the county recorder, who shall make a record thereof in the proper book of records and file and preserve it. The other copy shall be forwarded by the auditor or clerk to the secretary of state."

emergency ordinances, it would have stated so in the statutory procedures for annexation. However, no such language exists in R.C. 709.10, or anywhere in R.C. Chapter 709.

{¶ 24} Appellants also contend that Section 1f, Article II of the Ohio Constitution supports their position. In this regard, appellants argue that R.C. 709.10 must be interpreted as an exception to R.C. 731.30 to preserve the right of referendum. Again, we disagree. Section 1f, Article II of the Ohio Constitution provides:

"The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law."

{¶ 25} Although Section 1f, Article II expressly provides residents of a municipality with the power to subject ordinances to referendum, the constitutional section also explicitly states that "*such powers shall be exercised in the manner now or hereafter provided by law*." (Emphasis added.) To that end, R.C. 731.29 provides that "[a]ny ordinance or other measure passed by the legislative authority of a municipal corporation shall be subject to the referendum except as provided by section 731.30 of the Revised Code." Further, R.C. 731.30 states that "emergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in such municipal corporation, *shall go into immediate effect*." (Emphasis added.) Clearly, R.C. 731.29 and 731.30, which preclude referendum of properly adopted emergency legislation, do not contravene the rights afforded to citizens under Section 1f, Article II of the Ohio Constitution.

{¶ 26} Accordingly, we hold that the enactment of emergency legislation by a municipality accepting an application for annexation of real estate is not prohibited by R.C. 709.10 or Section 1f, Article II of the Ohio Constitution.

Moreover, in accordance with R.C. 731.29 and 731.30, emergency legislation adopted by a municipality is not subject to referendum.

{¶ 27} For all of the foregoing reasons, we find that the trial court properly granted appellee's Civ.R. 12(B)(6) motion and dismissed appellants' complaint. Therefore, albeit for different reasons, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., RESNICK, F.E. SWEENEY and COOK, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 28} I disagree with the majority's conclusion that property may be annexed through "emergency" legislation not subject to a referendum. I believe that allowing such a process deprives Ohio citizens of their right to a referendum provided under Section 1f, Article II of the Ohio Constitution.

{¶ 29} This case presents a clear example of how such an interpretation can lead to an abuse of this important right. In this case, the Board of Commissioners of Madison County had approved two petitions annexing land to the city of London and the London City Counsel passed two ordinances accepting the annexations. Referendum petitions were timely filed. The city of London then repealed the two annexation ordinances, and passed them again as "emergency legislation," thereby circumventing the referendum attempt. It is difficult for me to imagine a more deliberate attempt to thwart a constitutional right. I fear that the majority's approval of this procedure will provide a road map to each municipality in the future to avoid referendums when they have been filed, as we set forth no guidelines or exceptions for allowing such circumvention but rather grant wholesale approval to the emergency process.

**{¶ 30}** I believe that R.C. 709.10, as a special provision relating to annexation, clearly controls over R.C. 731.30, a general provision relating to ordinances. See *Tamele v. Brinkman* (1972), 30 Ohio Misc. 49, 53, 59 O.O.2d 292, 294, 284 N.E.2d 210, 213. Therefore, I believe that R.C. 709.10 allows voters time to vote on a referendum even in the face of emergency legislation to annex property. *Navarre v. Massillon* (Aug. 4, 1997), Stark App. No. 96-CA-0426, unreported.

**{¶ 31}** R.C. 731.30 allows emergency measures "necessary for the immediate preservation of the *public peace, health, or safety * * *.*" (Emphasis added.) Appellee, the city of London, presented no evidence as to why an emergency ordinance was necessary, nor can I envision any scenario where it would be. The process of land development and transfer are slow and deliberate events, sometimes taking years. What scenario could possibly be such a dire emergency that it cannot wait an additional thirty days?

**{¶ 32}** R.C. 709.10 states:

"The annexation shall become effective thirty days after the passage of the resolution or ordinance by the legislative authority of the municipal corporation accepting annexation, provided that if the resolution or ordinance is subjected to a referendum, the annexation, if approved by the electors, shall become effective thirty days after such approval."

**{¶ 33}** There is nothing in this statute that speaks to emergency legislation. To allow R.C. 731.30 to trump R.C. 709.10 violates Section 1f, Article II of the Ohio Constitution, which states:

"The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law."

**{¶ 34}** I do not believe that the General Assembly can use the phrase "provided by law" to circumvent or abrogate the constitutional right to referendum

afforded in Section 1f, Article II of the Ohio Constitution.  Nor do I believe that the General Assembly intended R.C. 731.30 to be used to do so.  The right of referendum "reserved to the people of each municipality" is mere illusion if every time a referendum petition challenging an annexation is filed, a municipality can repeal the annexation legislation and pass identical "emergency" legislation, free from the reach of the referendum.

**{¶ 35}** As the court in *Navarre* stated:

"[O]ne of the most inviolate rules of any court is to construe statutes in such a manner as to avoid foreclosing the rights of voters to make their will known to their legislators."  *Id.* at 4.

**{¶ 36}** The majority forecloses that right by its judgment.  Therefore, I respectfully dissent.

PFEIFER, J., concurs in the foregoing dissenting opinion.

_____