The State ex rel. Laughlin et al. *v.* James, Clerk.

[Cite as *State ex rel. Laughlin v. James,*
115 Ohio St.3d 231, 2007-Ohio-4811.]

(No. 2007–1253—Submitted September 11, 2007—Decided September 20, 2007.)

**Per Curiam.**

{¶ 1} This is an original action for a writ of mandamus to compel a village clerk-treasurer to transmit to the board of elections a referendum petition and a certified copy of the ordinance being challenged by the petition. Because the clerk-treasurer has no duty to transmit an emergency ordinance enacted in accordance with statutory requirements, we deny the writ.

### Ordinance No. 2007–03

{¶ 2} Quillin Properties, Ltd., owns 70.373 acres of land in Hilliar Township, Knox County, Ohio. Between September and November 2006, Quillin filed petitions with the Knox County Board of Commissioners to annex its property in Hilliar Township to the village of Centerburg. Relators, Julie and Brian Laughlin, own property that is adjacent to the property sought to be annexed. On December 14, 2006, the Knox County Board of Commissioners adopted a resolution granting Quillin's November 2006 petition to annex the township property to the village. A few days later, respondent, Centerburg Clerk–Treasurer Teri James, received a certified transcript of the board's annexation proceedings as well as a map and petition.

{¶ 3} In March 2007, the Centerburg Village Council accepted Quillin's application for annexation by adopting Ordinance No. 2007–03, which did not contain any provision declaring it to be an emergency measure. The first reading of the ordinance occurred at the village council's January 2, 2007 regular meeting, fewer than 60 days after the clerk-treasurer received the proposed annexation. See R.C. 709.04.

{¶ 4} Before circulating her petition against Ordinance No. 2007–03, Julie Laughlin filed a certified copy of the ordinance with respondent James, the clerk-treasurer, in accordance with R.C. 731.31. In response to Julie Laughlin's

suggestion to a representative of Quillin that Ordinance No. 2007–03 may have been erroneously adopted, the village solicitor determined that the first reading of the ordinance had occurred earlier than the time specified in R.C. 709.04.

## Ordinance Nos. 2007–06 and 2007–07

{¶ 5} As a result of the error in the council's passage of Ordinance No. 2007–03, the solicitor, after discussing the matter with the mayor and the council president, prepared emergency ordinances to rescind Ordinance No. 2007–03 and to adopt a new one accepting Quillin's annexation. The village officials were aware that the Laughlins planned to file a referendum petition against Ordinance No. 2007–03 and that passage of the new ordinances as emergency ordinances would preclude any referenda.

{¶ 6} The council minutes show that the solicitor recommended at the April 2, 2007 village council meeting that council rescind Ordinance No. 2007–03 and adopt a new ordinance accepting Quillin's annexation:

{¶ 7} "Solicitor Stroh stated that the Quillins had told him that in conversations with Julie Laughlin, Julie had brought up the issue that she did not think the annexation acceptance was passed correctly. Solicitor Stroh created an annexation timeline and then went through the rules. He determined that an error may have been made in a time frame matter as to how soon the first reading was done on the annexation ordinance. He said it was a slight technical issue that we may be able to clean up in dealing with wanting to make sure this is clean, knowing it might be challenged. He recommended it rescind Ordinance 2007–03 by emergency, and then consider another ordinance to accept the application."

{¶ 8} The solicitor further mentioned that he had drafted the new ordinances as emergency ordinances because there were several reasons to support a valid emergency declaration and that if council chose to pass them in this manner, it would defeat the attempted referendum. The minutes state:

{¶ 9} "[Soliciter Stroh] advised Council that there is a referendum issue out there that if filed would put the Quillin annexation in a stay until the election in November, and stated Council can defeat a referendum by an emergency ordinance as emergency legislation is not subject to a referendum. Solicitor Stroh stated he discussed this issue with Council President Wharton after the Planning Commission meeting, and the ordinance is drafted as an emergency, and there are several reasons it is a valid emergency piece of legislation. It would annex the property not as subject to [Mac Quillin's] plan which is unapproved, but as was made clear to Mac when he annexed that the property comes in rural residential and all he can do once we accept this is build one house. That is all he is permitted to do. He recommended rescinding Ordinance 2007–

03 for cleanup purposes, and pass O–07–04B, although whether to do it as an emergency to defeat the referendum was Council's decision."

{¶ 10} On April 2, without any discussion by its members, the village council adopted Ordinance No. 2007–06 to rescind Ordinance No. 2007–03. Ordinance No. 2007–06 specifies that it "is hereby declared to be an emergency, necessary for the preservation of the public health, safety and welfare for the purpose of permitting Council to immediately consider replacement legislation for Ordinance 2007–03." The village council also adopted Ordinance No. 2007–07, which accepted Quillin's application for annexation and declared an emergency. No council member spoke on the ordinance before the vote.

### Emergency Declaration in Ordinance No. 2007–07

{¶ 11} The preamble to Ordinance No. 2007–07 provided that "the property owner has made a substantial investment in the community and needs timely acceptance of this Annexation so that he can proceed with applying to the Village Planning Commission for consideration of subdivision plans, major site plans, lot splits, and/or rezoning all of which are prerequisites before said property owner can proceed with any development of the land, which is being annexe[d] as Rural Residential" and that "the Plan for Growth and Protection of Centerburg Village Hilliar Township ('the Comprehensive Plan') identifies this area as a Targeted Growth Area."

{¶ 12} Section 3 of Ordinance No. 2007–07 contained the declaration of emergency for the ordinance:

{¶ 13} "That this Ordinance is hereby declared to be an emergency, necessary for the preservation of the public health, safety and welfare for the purpose of permitting the property owner to timely begin his application and other processes with [the] planning commission relating to proposed development for the subject property, to prevent any further delay due to Council's needing to correct Ordinance 2007–03 setting forth its initial acceptance of this subject property, to promptly accept the land so that there is no uncertainty with respect to the Village's ongoing planning for sanitary and storm sewer infrastructure improvements and future growth needs, and to accept the subject property for annexation in conformance with the Comprehensive Plan."

{¶ 14} Under the village's comprehensive plan, the property that is the subject of the annexation is a targeted growth area. The council adopted the plan as an emergency ordinance in 2002 to serve as "an outline of the intended future orderly growth and development" of the village after years of meetings between the village and the township. At the village planning commission's February and March 2007 meetings, Quillin presented a sketch plat of its proposed development of the property, but the planning commission ruled that it could not take any

action on Quillin's plans until the annexation became effective. Quillin's sketch plat was the first in many steps that had to be followed before its proposed subdivision could be approved.

{¶ 15} In addition, in December 2006 and April 2007, the village council passed emergency ordinances authorizing contracts with the company acting as the village engineer to conduct studies of the village's sanitary sewer system. A definitive resolution to the annexation of Quillin's property to the village is material to the engineer's analysis of the results and significance of its study, which is to be completed in the fall of 2007.

### Referendum Challenging Ordinance No. 2007–07

{¶ 16} On April 20, Julie Laughlin filed a certified copy of Ordinance No. 2007–07 with respondent James. A committee, which included the Laughlins, circulated a referendum petition requesting that Ordinance No. 2007–07 be submitted to the village electorate at the November 6, 2007 general election. On April 26, Julie Laughlin filed the referendum petition containing 62 signatures with James. By letter dated May 9, the village solicitor informed the committee that he had advised James to take no further action on the petition. The solicitor believed that the petition was invalid because the ordinance was a duly enacted emergency ordinance that was not subject to referendum. James has not transmitted a copy of Ordinance No. 2007–07 to the Knox County Board of Elections.

### Mandamus Case

{¶ 17} On July 13, 2007, the Laughlins filed this action for a writ of mandamus to compel James to transmit the referendum petition and a certified copy of Ordinance No. 2007–07 to the Knox County Board of Elections. On August 3, James filed a response to the complaint in which she denied that the Laughlins were entitled to the requested relief.

{¶ 18} On August 17, we granted an alternative writ and issued an expedited schedule for the presentation of evidence and briefs. We also granted Quillin's amended motion to intervene as a respondent. This cause is now before the court upon consideration of the merits.

### Mandamus

{¶ 19} To be entitled to the writ, the Laughlins must establish a clear legal right to have the referendum petition and a certified copy of Ordinance No. 2007–07 transmitted to the board of elections, a corresponding clear legal duty on the part of the clerk-treasurer to do so, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Marsalek v. S. Euclid City Council,* 111 Ohio St.3d 163, 2006-Ohio-4973, 855 N.E.2d 811, ¶ 8. The Laughlins have established the last requirement because a declaratory judgment would not be a

complete remedy unless coupled with extraordinary ancillary relief in the nature of a mandatory injunction to compel the clerk-treasurer to comply with the requirements regarding referendum petitions. See, e.g., *State ex rel. N. Main St. Coalition v. Webb*, 106 Ohio St.3d 437, 2005-Ohio-5009, 835 N.E.2d 1222, ¶ 42. The proximity of the November 6 election also establishes the lack of an adequate remedy in the ordinary course of law. *State ex rel. Columbia Res. Ltd. v. Lorain Cty. Bd. of Elections*, 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 28.

{¶ 20} For the remaining mandamus requirements, R.C. 731.29 imposes a duty on a city auditor or a village clerk to transmit to the board of elections a referendum petition and a certified copy of the ordinance that is the subject of the petition:

{¶ 21} "When a petition, signed by ten per cent of the number of electors who voted for governor at the most recent general election for the office of governor in the municipal corporation, is filed with the city auditor or village clerk within thirty days after any ordinance or other measure is * * * passed by the legislative authority of a village, * * * ordering that such ordinance or measure be submitted to the electors of such municipal corporation for their approval or rejection, such auditor or clerk shall, after ten days, and not later than four p.m. of the seventy-fifth day before the election, transmit a certified copy of the text of the ordinance or measure to the board of elections."

### General Rule That Emergency Declarations Are Not Reviewable

{¶ 22} Based on the village solicitor's advice that she had no duty to do so because the ordinance is an emergency ordinance, James did not transmit the petition and Ordinance No. 2007–07 to the board of elections. Under R.C. 731.29, all ordinances are subject to referendum "except as provided by" R.C. 731.30. R.C. 731.30 provides that emergency ordinances are not subject to referendum. Instead, "emergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in such municipal corporation, shall go into immediate effect." R.C. 731.30. "Such emergency ordinances or measures must, upon a yea or nay vote, receive a two-thirds vote of all the members elected to the legislative authority, and the reasons for such necessity shall be set forth in one section of the ordinance or other measure." Id.

{¶ 23} The question of whether a declaration of emergency in an ordinance should be regarded as conclusive is still subject to debate. Annotation, Conclusiveness of Declaration of Emergency in Ordinance (1954), 35 A.L.R.2d 586, 587, Section 2.

{¶ 24} Ohio is among those jurisdictions that hold that a declaration of an emergency ordinance is final and is not reviewable by courts. Id. at 595, Section 4; Id. (2002), 35–37 A.L.R.2d Supp. 60, Section 4. Consistent with this view, we

have held that "[w]here an ordinance, passed by the council of a municipality, is declared to be an emergency * * * and sets forth the reasons for the immediate necessity thereof, the legislative determination of the existence of an emergency is not reviewable by a court." *Jurcisin v. Cuyahoga Cty. Bd. of Elections* (1988), 35 Ohio St.3d 137, 519 N.E.2d 347, paragraph three of the syllabus.

{¶ 25} To be sure, "[t]he constitutional right of citizens to referendum is of paramount importance," and courts liberally construe municipal referendum powers so as to permit rather than to preclude their exercise by the people. *State ex rel. Ohio Gen. Assembly v. Brunner*, 115 Ohio St.3d 103, 2007-Ohio-4460, 872 N.E.2d 912, ¶ 8; *State ex rel. Commt. for the Proposed Ordinance to Repeal Ordinance No. 146–02, W. End Blight Designation v. Lakewood*, 100 Ohio St.3d 252, 2003-Ohio-5771, 798 N.E.2d 362, ¶ 30; Section 1f, Article II, Ohio Constitution (municipal referendum powers are reserved to the people of each municipality on all questions that municipalities "may now or hereafter be authorized by law to control by legislative action").

{¶ 26} Yet we have held that the legislative declaration of an emergency— which the General Assembly excepted from its general legislative authorization of municipal referendum in R.C. 731.29—is not reviewable by courts because the two-thirds legislative vote required to enact emergency legislation sufficiently protects the people's right to referendum. As we have explained:

{¶ 27} " 'It may seem strange to sustain legislation as emergency legislation not subject to referendum, where there is in fact no emergency, or where the reasons given for the necessity and for declaring the emergency do not appear to be valid reasons. However, as does Section 4227–3, General Code [now R.C. 731.30], provisions for emergency legislation usually safeguard referendum rights by requiring substantially more than a majority vote to enact emergency legislation. The statutory requirement of stating reasons for declaring the emergency is provided only to satisfy voters that their representatives did have valid reasons for the necessity of declaring that the ordinance was an emergency. If there was in fact no emergency or if the reasons given for such necessity are not valid reasons, the voters have an opportunity to take appropriate action in the subsequent election of their representatives.' " *State ex rel. Moore v. Abrams* (1991), 62 Ohio St.3d 130, 132, 580 N.E.2d 11, quoting *State ex rel. Fostoria v. King* (1950), 154 Ohio St. 213, 220–221, 43 O.O. 1, 94 N.E.2d 697.

### Duty to Set Forth Reasons for an Emergency in the Ordinance

{¶ 28} Nevertheless, we have also recognized that "the statutory duty to set forth reasons for an emergency in an ordinance is mandatory. Hence, the failure to do so, for example, by including purely conclusory, tautological, or illusory language in the emergency measure fails to meet the R.C. 731.30 requirements for a valid emergency ordinance." *State ex rel. Webb v. Bliss*, 99 Ohio St.3d 166,

2003-Ohio-3049, 789 N.E.2d 1102, ¶ 14; *State ex rel. Waldick v. Williams* (1995), 74 Ohio St.3d 192, 195, 658 N.E.2d 241; *Moore*, 62 Ohio St.3d at 132–133, 580 N.E.2d 11.

{¶ 29} Therefore, the dispositive issue is whether Ordinance No. 2007–07 set forth legally sufficient reasons for its passage as an emergency ordinance. In order to determine this issue, we must review the text of the ordinance. See R.C. 731.30 (requiring that the reasons for the emergency "shall be set forth in one *section* of the ordinance" [emphasis added] ). Because the preamble is not a section of Ordinance No. 2007–07, it cannot supply the required reasons for the emergency. See *New Richmond v. Greene*, Clermont App. Nos. CA2003–05–045 and CA2003–07–054, 2004-Ohio-3540, 2004 WL 1485885, ¶ 18, citing *Hockett v. State Liquor Licensing Bd.* (1915), 91 Ohio St. 176, 192, 110 N.E. 485; cf. *Webb* at ¶ 2 (court analyzed reasons specified in preamble to ordinance when the text of the ordinance incorporated them).

{¶ 30} In Section 3 of Ordinance No. 2007–07, the Centerburg village council declared an emergency and stated that the ordinance was "necessary for the preservation of the public health, safety and welfare" for four reasons: (1) to permit "the property owner to timely begin his application and other processes with [the] planning commission relating to proposed development for the subject property," (2) "to prevent any further delay due to Council's needing to correct Ordinance 2007–03 setting forth its initial acceptance of this subject property," (3) "to promptly accept the land so that there is no uncertainty with respect to the Village's ongoing planning for sanitary and sewer infrastructure improvements and future growth needs," and (4) "to accept the subject property for annexation in conformance with the Comprehensive Plan."

{¶ 31} The Laughlins claim that these reasons are insufficient to comply with R.C. 731.30 because there is no mention of "immediate" necessity in the ordinance, the village council's meeting minutes do not indicate that the council either discussed or considered the reasons for declaring the ordinance to be an emergency, the sole reason for making the emergency declaration was to avoid a referendum, and none of the specified reasons in the ordinance is sufficient. The Laughlins' claims lack merit for the following reasons.

{¶ 32} First, there is no requirement that an emergency declaration contain specific language that its enactment is an *immediate* necessity. R.C. 731.30 does provide that "emergency ordinances or measures necessary for the *immediate* preservation of the public peace, health, or safety in such municipal corporation, shall go into *immediate* effect." (Emphasis added.) But R.C. 731.30 does not require that every emergency declaration contain a conclusory statement to that effect.

{¶ 33} We have held that the mere parroting of comparable conclusory language is insufficient to justify the declaration of an emergency. See *Webb*, 99 Ohio St.3d 166, 2003-Ohio-3049, 789 N.E.2d 1102, ¶ 16–17 (emergency clause stating that ordinance "would be beneficial and would promote the public health, safety, and the economic interest of the community" was insufficient); *Youngstown v. Aiello* (1951), 156 Ohio St. 32, 45 O.O. 45, 100 N.E.2d 62, paragraph three of the syllabus (clause reciting that ordinance was necessary to preserve the public peace, health, and safety lacked validity as an emergency enactment entitled to immediate effect).

{¶ 34} As the respondents note, a review of the entire text of Section 3 of Ordinance No. 2007–07 establishes that the village council stated that the legislation was intended for immediate effect, e.g., that the ordinance was declared to be an "emergency" and that the ordinance "shall take effect and be in force *immediately*." (Emphasis added.)

{¶ 35} Second, the Laughlins erroneously claim that there is a requirement that the council minutes must show that there was a discussion about the reasons supplied for the emergency declaration. R.C. 731.30 does not require any such discussion, and we cannot impose a duty on the village council that the statute does not. See *State ex rel. Boccuzzi v. Cuyahoga Cty. Bd. of Commrs.*, 112 Ohio St.3d 438, 2007-Ohio-323, 860 N.E.2d 749, ¶ 18, quoting *State ex rel. Lecklider v. School Emp. Retirement Sys.*, 104 Ohio St.3d 271, 2004-Ohio-6586, 819 N.E.2d 289, ¶ 23 (" 'In mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the legislative branch of government, and courts are not authorized to create the legal duty enforceable in mandamus' "); see, also, *State ex rel. Willke v. Taft*, 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, ¶ 22 (applying this rule in an election case).

{¶ 36} Moreover, the language relied on by the Laughlins—that "the legislative body must consider, determine and announce" its reasons for the emergency declaration, *Youngstown*, 156 Ohio St. at 37, 45 O.O. 45, 100 N.E.2d 62—was not contained in that case's syllabus and did not specifically require that there be evidence in the council's minutes of discussion of those reasons. The council minutes here establish that the solicitor advised the council concerning the emergency declaration and prepared the reasons specified in the ordinances before the council voted on them. Thus, the council had the opportunity to consider the reasons before its vote. No statute required that the council do anything more.

{¶ 37} Third, the village council was not precluded from declaring Ordinance No. 2007–07 to be an emergency based on an intent to defeat any referendum. Municipalities may circumvent a referendum by "passing at one session after the filing of the referendum petition two consecutive emergency ordinances, one to

repeal the ordinance under referendum and the other to re-enact substantially the same ordinance as repealed; and * * * it can do that if the sole purpose of council in passing two new ordinances is to prevent a vote by the electorate on the legislation contained in the ordinance with respect to which the referendum petition was filed." *State ex rel. Tester v. Ottawa Cty. Bd. of Elections* (1962), 174 Ohio St. 15, 16, 21 O.O.2d 107, 185 N.E.2d 762; *Taylor v. London* (2000), 88 Ohio St.3d 137, 138, 723 N.E.2d 1089, fn. 3. Therefore, once the referendum was filed by the Laughlins against Ordinance No. 2007–03, the village council was free to enact Ordinance No. 2007–06 to rescind the first ordinance and to enact Ordinance No. 2007–07 to reenact the first ordinance as an emergency ordinance to defeat the referendum as long as the council specified reasons for the emergency that were not "purely conclusory, tautological, or illusory." *Webb*, 99 Ohio St.3d 166, 2003-Ohio-3049, 789 N.E.2d 1102, ¶ 14. Here, it is also apparent that freedom from referendum was not the sole reason for the council's rescission of Ordinance No. 2007–03 and its enactment of Ordinance Nos. 2007–06 and 2007–07. Ordinance No. 2007–03 was defective because it violated R.C. 709.04, and as the solicitor noted at the council meeting, there were valid reasons for declaring the ordinances to be emergencies.

{¶ 38} Finally, the reasons specified in Section 3 of Ordinance No. 2007–07 were legally sufficient to support the emergency declaration. The first reason—that the emergency enactment was necessary to permit "the property owner to timely begin his application and other processes with [the] planning commission relating to proposed development for the subject property"—reflects the fact that Quillin's proposed development requires a time-consuming process that could not be started without the initial acceptance of the annexation. Although Quillin attempted to begin that process by presenting a sketch plat of its proposed development to the planning commission in February and March, the commission ruled that it could not take any action until the annexation had been accepted. In *Taylor*, 88 Ohio St.3d 137, 723 N.E.2d 1089, we specifically approved the authority of a city council to enact emergency legislation accepting applications for annexation.

{¶ 39} The second reason—"to prevent any further delay due to Council's needing to correct Ordinance 2007–03 setting forth its initial acceptance of this subject property"—reflects the limited window of time available to council under R.C. 709.04 to accept the annexation. See R.C. 709.04 ("If the legislative authority fails to pass an ordinance or resolution accepting the petition for annexation within a period of one hundred twenty days after those documents are laid before it by the auditor or clerk, the petition for annexation shall be considered rejected by the legislative authority").

{¶ 40} The third reason—"to promptly accept the land so that there is no uncertainty with respect to the Village's ongoing planning for sanitary and storm sewer infrastructure improvements and future growth needs"—is supported by evidence that the village engineer's study of the village's sanitary sewer system, which is due to be completed in the fall of this year, required a definitive resolution of the annexation of Quillin's property to the village. We have consistently held that comparable reasons are sufficient to support an emergency declaration. See *State ex rel. Waldick v. Williams* (1995), 74 Ohio St.3d 192, 658 N.E.2d 241 (clause of ordinance providing for engineering services to obtain drinkable water and to comply with federal guidelines for improvements to water system sufficiently stated emergency); *State ex rel. Taxpayers League of N. Ridgeville v. Noll* (1984), 11 Ohio St.3d 190, 11 OBR 502, 464 N.E.2d 1007 (emergency ordinance to purchase wastewater treatment plant); *Fostoria,* 154 Ohio St. 213, 43 O.O. 1, 94 N.E.2d 697 (emergency ordinance providing for issuance of bonds to finance enlargement of the city's sewage system by constructing a new sewer).

{¶ 41} The final reason provided in the ordinance is "to accept the subject property for annexation in conformance with the Comprehensive Plan." The comprehensive plan, which had previously been enacted as an emergency ordinance to provide an outline for the future development of the village, specifies the Quillin property as a targeted growth area.

{¶ 42} These reasons, when considered together, are not so conclusory, tautological, or illusory as to invalidate the village council's emergency declaration in Ordinance No. 2007–07. The reasons are considerably more detailed than the ones we found to be insufficient in *Webb,* which is cited by the Laughlins. Therefore, although the determination by council and the soundness of its reasons may be subject to debate, they " 'are not subject to review by the courts.' " *Jurcisin,* 35 Ohio St.3d at 145, 519 N.E.2d 347, quoting *Fostoria,* 154 Ohio St. 213, 43 O.O. 1, 94 N.E.2d 697, paragraph four of the syllabus.

## Conclusion

{¶ 43} Because Ordinance No. 2007–07 is a valid emergency ordinance that is not subject to referendum, the Laughlins cannot establish either a clear legal right to the transmission of their referendum petition and a certified copy of Ordinance No. 2007–07 to the board of elections or a clear legal duty to do so on the part of the clerk-treasurer.

{¶ 44} Based on the foregoing, we deny the writ. The denial of the writ renders moot respondents' argument that laches bars the Laughlins' mandamus claim. See, e.g., *State ex rel. Evans v. Blackwell,* 111 Ohio St.3d 437, 2006-Ohio-

5439, 857 N.E.2d 88, ¶ 35; *State ex rel. Essig v. Blackwell,* 103 Ohio St.3d 481, 2004-Ohio-5586, 817 N.E.2d 5, ¶ 33.

Writ denied.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., dissents and would grant the writ.

———

Manos, Martin, Pergram & Dietz Co., L.P.A., and James M. Dietz, for relators.

Metz, Bailey & McLoughlin, and Kyle J. Stroh, for respondent Teri James.

Wiles, Boyle, Burkholder & Bringardner Co., L.P.A., Michael L. Close, Eugene L. Hollins, and Jennifer B. Casto, for respondent Quillin Properties, Ltd.