O’Donnell, J.,
dissenting.
{¶ 46} This case involves a referendum sought by relators on a duly enacted emergency ordinance rezoning certain property owned by FISE. The clerk and the city council have no duty to perform the requested acts for an emergency ordinance enacted in accordance with statutory requirements, and thus, the court should deny the writ. In its haste to grant the requested extraordinary relief in *15 mandamus to afford relators a nonexistent right of referendum on the emergency-ordinance, the majority sweeps aside years of longstanding precedent and interpretative analysis. Therefore, I respectfully dissent.
Emergency Declaration
{¶ 47} As the majority notes, FISE argues that the relators are not entitled to have their referendum petition considered as a valid petition because the ordinance sought to be referred is an emergency ordinance that is not subject to referendum, whereas relators claim that the charter provides that emergency ordinances like the one at issue here are subject to referendum.
{¶ 48} In resolving this disagreement, we are guided by the precept that “[m]unicipal charters must be construed to give effect to all separate provisions and to harmonize them with statutory provisions whenever possible.” State ex rel. Fattlar v. Boyle (1998), 83 Ohio St.3d 123, 127, 698 N.E.2d 987. That is, “[i]n the absence of express language in a charter demonstrating a conflict with a statute, it is the duty of courts to harmonize the provisions of the charter and statutes relating to the same matter.” State ex rel. Ryant Commt. v. Lorain Cty. Bd. of Elections (1999), 86 Ohio St.3d 107, 112, 712 N.E.2d 696. The presumption is thus that there is no conflict.
{¶ 49} Section 2, Article VIII of the South Euclid Charter states:
{¶ 50} “Ordinances providing for a tax levy or for improvements petitioned for by the owners of a majority of the feet front of the property benefited and to be specially assessed therefor, and appropriation ordinances limited to the subject of appropriations shall not be subject to referendum, but except as otherwise provided by the Constitution or general laws of the State of Ohio, all other ordinances and resolutions, including, but not limited to, emergency ordinances and resolutions, shall be subject to referendum; provided, however, that emergency ordinances and resolutions shall go into effect at the time indicated therein.” (Emphasis added.)
{¶ 51} The pertinent language of Section 2, Article VIII of the South Euclid Charter thus specifies:
{¶ 52} (1) Certain ordinances — those providing for tax levies, certain property improvements, and appropriations — are not subject to referendum.
{¶ 53} (2) Except as otherwise provided by the Ohio Constitution or by the general laws of the state, other ordinances and resolutions, including emergency ordinances and resolutions, are subject to referendum.
{¶ 54} (3) Emergency ordinances and resolutions that are subject to referendum shall go into effect at the time indicated therein.
*16 {¶ 55} The majority and relators rely on that portion of Section 2, Article VIII of the charter that provides that emergency ordinances and resolutions are subject to referendum. But as FISE correctly observes, the cited charter provision is expressly limited by the phrase “except as otherwise provided by the Constitution or general laws of the State of Ohio.” FISE argues that Section Id, Article II of the Ohio Constitution, R.C. 731.29, and 731.30 “otherwise provide” that emergency municipal legislation is not subject to referendum.
{¶ 56} As the majority observes, relators are correct that Section Id, Article II of the Ohio Constitution does not “otherwise provide” because that section is restricted to state laws.
{¶ 57} Nevertheless, notwithstanding the majority’s holding to the contrary, the “general laws of the State of Ohio” do “otherwise provide” that municipal emergency legislation is not subject to referendum. “Under R.C. 731.29, all ordinances are subject to referendum ‘except as provided by’ R.C. 731.30. R.C. 731.30 provides that emergency ordinances are not subject to referendum. Instead, ‘emergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in such municipal corporation, shall go into immediate effect.’ R.C. 731.30. ‘Such emergency ordinances or measures must, upon a yea or nay vote, receive a two-thirds vote of all the members elected to the legislative authority, and the reasons for such necessity shall be set forth in one section of the ordinance or other measure.’ Id.” State ex rel. Laughlin v. James, 115 Ohio St.3d 231, 2007-Ohio-4811, 874 N.E.2d 1145, ¶22.
{¶ 58} As we explicitly held in Taylor v. London (2000), 88 Ohio St.3d 137, 723 N.E.2d 1089, paragraph two of the syllabus, “[i]n accordance with R.C. 731.29 and 731.30, emergency legislation adopted by a municipality is not subject to referendum.”[1]
{¶ 59} The majority opinion credits relators’ contention in their reply brief that R.C. 731.29 and 731.30 are inapplicable here because under R.C. 731.41, “Sections 731.28 to 731.41, inclusive, of the Revised Code do not apply to any municipal corporation which adopts its own charter containing an initiative and referendum petition for its own ordinances and other legislative measures.” Notably, relators could have, but did not, raise this claim in their initial merit brief even though FISE raised the issue of the applicability of R.C. 731.29 and 731.30 in its answer, and so relators arguably waived this argument. See State ex rel. Murray v. Scioto Cty. Bd. of Elections, 127 Ohio St.3d 280, 2010-Ohio-5846, 939 N.E.2d 157, ¶ 58 (“Because [relator in an expedited election case] could have raised this *17 argument in her initial merit brief but failed to do so, we do not address this claim”), and cases cited therein. In fact, in their initial merit brief, relators ignored the charter language “except as otherwise provided by the Constitution or general laws of the State of Ohio,” even though FISE relied on that language in both its answer and in an August 5, 2011 letter sent to the Clerk of the South Euclid Council outlining FISE’s arguments against the referendum, which letter is attached as an exhibit to its motion to intervene in this case. By not raising their new argument in their initial brief, relators have deprived FISE of its opportunity to respond to it.
{¶ 60} Moreover, “[t]he statutory procedure governing municipal initiative and referendum in R.C. 731.28 through 731.41 applies to municipalities where the charter incorporates general law by reference, except where the statutory procedure conflicts with other charter provisions.” (Emphasis added.) State ex rel. Ditmars v. McSweeney (2002), 94 Ohio St.3d 472, 477, 764 N.E.2d 971.
{¶ 61} It is certainly true that in matters of local self-government, including local elections, a municipal charter will prevail over conflicting state law, Murray at ¶ 40, but there is no conflict here. Nor can we presume a conflict, when the charter unambiguously incorporates state law exempting emergency legislation from referendum as a precondition to the applicability of the charter provision authorizing referendum for emergency ordinances and resolutions. That is, the specified charter exception incorporating conflicting state law precludes the effectiveness of any subsequent “express language in [the South Euclid] charter demonstrating a conflict” with R.C. 731.29 and 731.30. Ryant, 86 Ohio St.3d at 112, 712 N.E.2d 696; State ex rel. N. Olmsted v. Cuyahoga Cty. Bd. of Elections (2001), 93 Ohio St.3d 529, 533, 757 N.E.2d 314.
{¶ 62} Consequently, although South Euclid has adopted its own charter, by specifying that the charter provision making certain ordinances and resolutions subject to referendum is expressly conditioned on whether exempting them from referendum is “otherwise provided by the * * * general laws of Ohio,” the city’s electorate has, in essence, incorporated R.C. 731.29 and 731.30. See, e.g., State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 37 (R.C. 731.41, which specifies that charter provisions prevail over conflicting statutes for municipal initiative and referendum provisions, is inapplicable where the charter incorporates general laws). A contrary construction of the charter would delete the language “except as otherwise provided by the * * * general laws of the State of Ohio”; this we cannot do. In fact, if the citizens of South Euclid had intended the interpretation claimed by relators, they would have simply left that language out of Section 2, Article VIII of the South Euclid Charter. The fact that they did not is dispositive of this case.
*18 {¶ 63} Furthermore, FISE’s construction of the charter provision, which applies the plain language of the exception, would not — as both the majority opinion and relators claim — -render the contingent referendum provision “meaningless.” Should the General Assembly in the future amend R.C. 731.29 and 731.30 to eliminate the provisions insulating emergency municipal legislation from referendum, the charter provision would apply to subject this legislation to referendum, with the additional exception that the emergency legislation shall take effect at the time indicated therein instead of it being held in abeyance for the referendum.
{¶ 64} Therefore, relators are incorrect that under the South Euclid Charter, Ordinance No. 05-11 was subject to referendum notwithstanding its emergency declaration. The charter specifically incorporates general law — R.C. 731.29 and 731.30 — that exempts emergency ordinances from municipal referendum. Section 2, Article VIII, South Euclid Charter.
{¶ 65} The South Euclid City Council passed Ordinance No. 05-11 as emergency legislation. As long as the reasons specified in the ordinance are not conclusory, tautological, or illusory, the legislative determination of an emergency is not reviewable by a court notwithstanding the paramount right of citizens to referendum. See generally Laughlin, 115 Ohio St.3d 231, 2007-Ohio-4811, 874 N.E.2d 1145, ¶ 24-27; Jurcisin v. Cuyahoga Cty. Bd. of Elections (1988), 35 Ohio St.3d 137, 519 N.E.2d 347, paragraph three of the syllabus (“Where an ordinance, passed by the council of a municipality, is declared to be an emergency * * * and sets forth the reasons for the immediate necessity thereof, the legislative determination of the existence of an emergency is not reviewable by a court”). The statutory requirement of a two-thirds vote by the municipal legislative authority “sufficiently protects the people’s right to referendum.” Laughlin at ¶ 26. As we explained in State ex rel. Fostoria v. King (1950), 154 Ohio St. 213, 220-221, 43 O.O. 1, 94 N.E.2d 697:
{¶ 66} “It may seem strange to sustain legislation as emergency legislation not subject to referendum, where there is in fact no emergency, or where the reasons given for the necessity and for declaring the emergency do not appear to be valid reasons. However, as does Section 4227-3, General Code [now R.C. 731.30], provisions for emergency legislation usually safeguard referendum rights by requiring substantially more than a majority vote to enact emergency legislation. The statutory requirement of stating reasons for declaring the emergency is provided only to satisfy voters that their representatives did have valid reasons for the necessity of declaring that the ordinance was an emergency. If there was in fact no emergency or if the reasons given for such necessity are not valid reasons, the voters have an opportunity to take appropriate action in the subsequent election of their representatives.” (Emphasis added.) See also *19 Laughlin at ¶ 27; State ex rel. Moore v. Abrams (1991), 62 Ohio St.3d 130, 132, 580 N.E.2d 11.
{¶ 67} Moreover — and relators do not assert otherwise — it appears that at least some of the reasons specified by the South Euclid City Council are sufficient to support the emergency declaration even if their soundness may be subject to debate. See Section 3 of Ordinance No. 05-11, specifying that the ordinance is deemed to be an emergency measure because, inter alia, it “is necessary for the City to improve its economic development opportunities” and “to expedite the acquisition of property for use as public green space.”
{¶ 68} Nor would it matter if the city council enacted Ordinance No. 05-11 as an emergency ordinance with an intent to defeat any potential referendum.[2] Laughlin at ¶ 37, citing State ex rel. Tester v. Ottawa Cty. Bd. of Elections (1962), 174 Ohio St. 15, 16, 21 O.O.2d 107, 185 N.E.2d 762, and Taylor, 88 Ohio St.3d at 138, 723 N.E.2d 1089, fn. 3. The citizens’ remedy is through subsequent election of the city council members. See Laughlin at ¶ 27; King, 154 Ohio St. at 220-221, 43 O.O. 1, 94 N.E.2d 697.
{¶ 69} Therefore, even if the reason given by the city council and its clerk for rejecting relators’ referendum petition — that they violated R.C. 731.32 by filing a precirculation certified copy of the ordinance with the wrong official — was erroneous, relators are still not entitled to the requested extraordinary relief in mandamus to compel the South Euclid City Council and its clerk to proceed as if the referendum petition were valid because Ordinance No. 05-11 was emergency legislation that was not subject to referendum. “It is axiomatic that ‘[mjandamus will not issue to compel a vain act.’ ” See State ex rel. Oberlin Citizens for Responsible Dev. v. Talarico, 106 Ohio St.3d 481, 2005-Ohio-5061, 836 N.E.2d 529, ¶ 17, quoting State ex rel. Moore v. Malone, 96 Ohio St.3d 417, 2002-Ohio-4821, 775 N.E.2d 812, ¶ 38.
Conclusion
{¶ 70} Based on the foregoing, relators have not established either a clear legal right to have the city council and its clerk determine that the referendum petition is valid and proceed accordingly or a corresponding clear legal duty on the part of the council and clerk to do so. Ordinance No. 05-11 is an emergency ordinance that is not subject to referendum, and the writ should be denied. Therefore, because by holding otherwise the majority ignores applicable precedent and *20 adopts a tortured construction of Section 2, Article VIII of the South Euclid Charter that contravenes its plain language, I dissent.
McTigue & McGinnis, L.L.C., Donald J. McTigue, Mark A. McGinnis, and J. Corey Colombo, for relators.
Michael P. Lograsso, South Euclid Director of Law; and Walter & Haverfield, L.L.P., and R. Todd Hunt, for respondents.
Berns, Ockner & Greenberger, L.L.C., Sheldon Berns, and Benjamin J. Ockner, for intervening respondent.

. In support of their mandamus claim, relators cite the dissenting opinion in Taylor, 88 Ohio St.3d at 145, 723 N.E.2d 1089 (Lundberg Stratton, J., dissenting). However, the view expressed in that opinion — that the General Assembly did not intend to insulate emergency ordinances from referendum when it enacted R.C. 731.30 — has never been adopted by the court.

. There is no evidence here that this was why the city council enacted Ordinance No. 05-11 as an emergency ordinance.