[Cite as *McQueen v. Dohoney*, 2013-Ohio-2424.]

# IN THE COURT OF APPEALS

## FIRST APPELLATE DISTRICT OF OHIO

## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| LISA MCQUEEN, | : | APPEAL NO. C-130196 |
| | | TRIAL NO. A-1301595 |
| SHIRLENE BRITTON, | : | |
| PETE WITTE, | : | *O P I N I O N.* |
| EDWARD D. HYDE, | : | |
| JOHN BRANNOCK, | : | |
| and | : | |
| DOUGLAS B. ROBINSON, JR., | : | |
| Plaintiffs-Appellees, | : | |
| and | : | |
| CITY OF CINCINNATI EX REL. LISA MCQUEEN, SHIRLENE BRITTON, PETE WITTE, EDWARD D. HYDE, JOHN BRANNOCK, and DOUGLAS B. ROBINSON, JR., | : | |
| | : | |
| Relators-Appellees, | : | |
| vs. | : | |
| MILTON R. DOHONEY, JR., CITY MANAGER, | : | |
| | : | |
| and | : | |
| THE CITY OF CINCINNATI, | : | |
| Defendants-Respondents-Appellants. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded with Instructions

Date of Judgment Entry on Appeal:  June 12, 2013

*The Law Firm of Curt C. Hartman* and *Curt C. Hartman*, and *Finney, Stagnaro, Saba & Patterson* and *Christopher P. Finney*, for Plaintiffs-Relators-Appellees,

*John P. Curp*, City Solicitor, and *Terrance A. Nestor*, Assistant City Solicitor, for Defendants-Respondents-Appellants,

*Squire Sanders LLP, Scott A. Kane, Pierre H. Bergeron* and *Colter L. Paulson*, for Amici Curiae Cincinnati Center City Development Corp., Port of Greater Cincinnati Development Authority, and Uptown Consortium, Inc.,

*Taft Stettinius & Hollister, LLP, W. Stuart Dornette* and *John B. Nalbandian*, for Amici Curiae Al Neyer, Associated Builders and Contractors, Flaherty & Collins Properties, JDL Warm Construction LLC, Messer Construction Co., Miller-Valentine Group, NorthPointe Group, Oswald Company, and Towne Properties,

*Katz Teller Brandt & Hild, Robert A. Pitcairn* and *Mark J. Jahnke*, for Amicus Curiae Cincinnati USA Regional Chamber.

Note: we have removed this case from the accelerated calendar.

CUNNINGHAM, Presiding Judge.

{¶1}    The city of Cincinnati and its city manager, Milton R. Dohoney, Jr., ("the city") appeal the judgment of the Hamilton County Court of Common Pleas declaring that emergency Ordinance No. 56-2013 is subject to the referendum power of the citizens of Cincinnati, and enjoining the city from acting under that ordinance pending the outcome of the referendum process.  Because we hold that, as a matter of law, the city's charter exempts the validly enacted emergency Ordinance No. 56-2013 from the referendum power of the citizenry, we reverse the common pleas court's judgment, and remand the case for the trial court to enter judgment in favor of the city.

## I.  Background Facts and Procedure

{¶2}    On March 6, 2013, Cincinnati's city council passed Ordinance No. 56-2013, which relates to, and authorizes the city manager to execute an agreement for the long-term leasing of the city's parking system.  The lease is captioned "Long-Term Lease and Modernization Agreement for the City of Cincinnati Parking System with the Port of Greater Cincinnati Development Authority."  And under its anticipated terms, the city will receive immediate substantial compensation, yearly lease payments, and a technological upgrade to the parking meter hardware, in exchange for giving up control over some aspects of the identified parking system. The city manager proposed the lease as a solution to meet a significant budget shortfall beginning with the fiscal year commencing on July 1, 2013.

{¶3}    Section 5 of Ordinance No. 56-2013 is an "emergency clause" that the city's administrators, including the city solicitor's office, "presented" to city council for its consideration.  And at city council's special session held on March 5, 2013, the city solicitor, John Curp, told council that the emergency clause would exempt the

ordinance from a referendum. On March 6, 2013, city council voted to adopt the ordinance by a vote of 5-4 and voted to retain the emergency clause by a vote of 6-3.

{¶4} Subsequently, a group of people, stipulated to be city residents, voters, and taxpayers ("plaintiffs-relators"), filed with the Hamilton County Court of Common Pleas a verified complaint seeking an ex parte temporary order restraining the city manager from executing the parking lease agreement and enjoining the city and the city manager from taking any action in furtherance of the ordinance. The plaintiffs-relators also sought declaratory and injunctive relief, and requested attorney fees based on a claim under 42 U.S.C. 1983. The plaintiffs-relators claimed to have a legal right to referendum on the issue that would be lost if the city were permitted to act upon the newly enacted ordinance.

{¶5} The common pleas court granted the temporary restraining order. Several days later, a committee of petitioners, including some of the plaintiffs-realtors, filed a copy of a referendum petition regarding Ordinance No. 56-2013 with the city's finance director, in accordance with R.C. 731.32.

{¶6} Because it contained a 42 U.S.C. 1983 claim, the city moved the case to the federal district court. The plaintiffs-relators dismissed their federal claim and amended the complaint to assert a claim, and statutory taxpayer standing, under R.C. 733.59. The district court remanded the action back to the Hamilton County common pleas court.

{¶7} On remand, the common pleas court ordered a consolidated hearing on the preliminary-injunction, the permanent-injunction, and the declaratory-judgment claims.

{¶8} The plaintiffs-relators asked the court to declare that Ordinance No. 56-2013 is subject to a referendum and to enjoin the implementation of the ordinance. In support, they restated allegations set forth in the amended complaint: that Ordinance No. 56-2013 did not pass with the requisite number of votes needed for emergency legislation under R.C. 731.30; that city council did not strictly comply with statutory requirements to designate an ordinance as emergency legislation; and that city council did not obtain the number of votes mandated by Cincinnati's charter ("the city's charter" or "the Charter") to decrease or abolish the powers of any department or division of the city. Additionally, they argued for the first time that the Charter provides for a referendum on all legislative acts, without any exception for emergency legislation.

{¶9} On March 15, 2013, the common pleas court held a hearing on the claims and accepted into evidence joint exhibits, including six pages of stipulated facts. The court found an ambiguity in the Charter and construed the Charter liberally to provide citizens with an unrestricted right of referendum. In doing so, the court rejected the city's argument that the substantive restrictions on the power of municipal referendum set forth in the Ohio Revised Code—including an exception for emergency ordinances—were incorporated into the Charter.

{¶10} Ultimately, the common pleas court declared that Ordinance No. 56-2013 was subject to referendum, and granted injunctive relief prohibiting the city from taking any action to implement the ordinance pending the outcome of any referendum. The common pleas court did not address the plaintiffs-relators' other arguments in support of referendum because it found the issue that it had determined to be dispositive.

{¶11}   The city now appeals, asserting in two assignments of error that the court of common pleas erred in granting declaratory and injunctive relief to the plaintiffs-relators.  The city asks this court to reverse the common pleas court's order and enter judgment declaring that Ordinance No. 56-2013 is a validly enacted emergency ordinance that is immediately effective and not subject to referendum. Amici, a group of private developers and membership organizations for area businesses, also urge us to reverse.

## II.  Jurisdiction and Standing

{¶12}   In its first assignment of error, the city raises the issues of jurisdiction and standing.  We address these issues in turn.

### A. Justiciability Requirement for a Declaratory-Judgment Action

{¶13}   By force of the Ohio Constitution, the subject-matter jurisdiction of the common pleas courts is limited to "justiciable matters."   Ohio Constitution, Article IV, Section 4(B).  Thus, in all actions, there must be an "actual controvers[y] between parties legitimately affected by specific facts," such that the court can "render [a] judgment[] which can be carried into effect."  *Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970).   The "actual controversy" requirement applies to actions for declaratory judgment.  *Mid-American Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 9, cited in *Mallory v. Cincinnati*, 1st Dist. No. C-110563, 2012-Ohio-2861, ¶ 10.

{¶14}   Here, the city argues that the plaintiffs-relators' declaratory-judgment claim did not present an actual controversy.  The city contends that when the amended complaint was filed, the claim was hypothetical, because sufficient

signatures to place the referendum on the ballot had not yet been collected, and the city had not refused to put the referendum on the ballot.

{¶15}   The common pleas court rejected the city's argument that the declaratory-judgment claim was speculative.   The court found that the case presented a real and substantial controversy, upon which the plaintiffs-relators and the city had assumed adversarial positions, concerning the right to subject the emergency ordinance to referendum.   And the court found that the right to referendum or any meaningful relief would be impaired if the plaintiffs-relators could not proceed before the city implemented the agreement authorized by the ordinance.

{¶16}   We review the lower court's decision with respect to justiciability under an abuse of discretion standard.  *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 13, clarifying *Mid-American Fire & Cas.*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142.   An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable.   *AAAA Ent., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).   An "unreasonable" decision is one that is not supported by a "sound reasoning process." *Id.*

{¶17}   In making its "justiciability" determination, the court approached the issue pragmatically, considering both the positions taken by the parties and the inadequacy of a remedy resulting from a delay in challenging the ordinance, which became effective immediately.   We hold that the common pleas court engaged in a sound reasoning process and did not abuse its discretion in determining that the plaintiffs-relators' claim was justiciable.

### B. Jurisdiction for a Statutory Taxpayer Action

{¶18}   Generally, R.C. 733.59 authorizes a taxpayer of a municipality to bring an action in his own name, on behalf of the municipal corporation, to vindicate a public right when a city or its officials refuse to do so. *See* R.C. 733.59. A taxpayer with "good cause" may be allowed his costs, and for a prevailing taxpayer, those costs may include his attorney fees.[1]  R.C. 733.61.

{¶19}   But R.C. 733.59 prevents a court from entertaining this derivative action unless the city's law director has rejected the taxpayer's written demand on the city's law director to pursue the action, and the taxpayer has provided security for the costs of the proceedings.   Typically, these requirements are jurisdictional prerequisites. *See State ex rel. Fisher v. City of Cleveland*, 109 Ohio St.3d 33, 2006-Ohio-1827, 845 N.E.2d 500, ¶ 11.

{¶20}   The city argues that the cause was not properly brought as a statutory taxpayer's action because the plaintiffs-relators had failed to comply with the security and demand requirements of R.C. 733.59. Because we agree that the plaintiffs-relators failed to comply with the security requirement of R.C. 733.59, we do not address whether the demand requirement was met.

{¶21}   The record demonstrates that after adding the statutory taxpayer claim, the plaintiffs-relators represented to the court by motion that they had deposited $325 with the Hamilton County Clerk of Courts as security for costs in accordance with the schedule set forth by the local rule.  The plaintiffs-relators then asked the court to accept the $325 deposit as sufficient security to meet the requirement of R.C. 733.59.  The common pleas court did so.  But the clerk's notation

---

[1] The common pleas court did not address the issue of costs in its order but certified that there "[wa]s no just cause for delay."

8

on the appearance docket demonstrates that plaintiffs-relators failed to deposit the promised funds or any funds with the clerk. Thus, they failed to satisfy the jurisdictional requirement of R.C. 733.59.

{¶22} The plaintiffs-relators argue that the city waived this issue because it failed to raise it in the court below. But even if we were to hold that another party could waive this jurisdictional prerequisite, we could not find a waiver in this case because the city raised the failure to post security as an affirmative defense in its amended answer, and the plaintiffs-relators represented to the court that they had paid the deposit.

{¶23} The plaintiffs-relators intimate that they cured the deficiency by paying the $325 deposit after the common pleas court had entered its judgment. But the record certified on appeal does not demonstrate that any deposit was made. Therefore, we do not reach the issue of whether the plaintiffs-relators could have corrected the defect in that manner.

{¶24} Because the plaintiffs-relators failed to satisfy the security requirement of R.C. 733.59, we hold that the action was not properly brought under that statute. *See State ex rel. Citizens for a Better Portsmouth v. Sydnor*, 61 Ohio St.3d 49, 54, 572 N.E.2d 649 (1991). Accordingly, the statutory provision authorizing an award of costs for a R.C. 733.59 action is inapplicable.

### C. Vindication of a Public Right

{¶25} Finally, the city argues that the plaintiffs-realtors lacked standing to bring their taxpayer claim for injunctive relief under R.C. 733.59 or the common law because they did not seek to vindicate a public right, but merely sought to benefit themselves.

{¶26} To have standing to pursue relief for all taxpayers, the party must demonstrate that he is volunteering "to enforce a right of action on behalf of and for the benefit of the public." *State ex rel. Nimon v. Springdale*, 6 Ohio St.2d 1, 215 N.E.2d 592 (1966), paragraph two of the syllabus; *State ex rel. Phillips Supply Co. v. City of Cincinnati*, 2012-Ohio-6096, 985 N.E.3d 257, ¶ 17 (1st Dist.); *Trustees of Prairie Twp. v. Garver*, 41 Ohio App. 232, 238, 180 N.E. 747 (5th Dist.1931). Here, the plaintiffs-relators argued that the public's right to a referendum would be negatively affected if the city was not enjoined from acting upon Ordinance No. 56-2013.

{¶27} We agree that the right to referendum is a public right and that the remedy requested, which will allow for an election on the issue, will benefit a public interest. *See Nimon* at 4. Therefore, the plaintiffs-relators have common law taxpayer standing because they seek injunctive relief to protect the public's right to referendum.

{¶28} In conclusion, we sustain the first assignment of error in part, because the common pleas court erred by allowing the action to proceed as a statutory taxpayer action, instead of a common law action, when the plaintiffs-relators failed to give security for the costs of the case.

### III. Is Ordinance No. 56-2013 Subject to Referendum?

{¶29} In its second assignment of error, the city argues that the common pleas court erred in finding that the validly enacted emergency ordinance is subject to referendum under the Charter. It maintains that the Charter incorporates state-

law provisions that exempt emergency municipal legislation from referendum.[2]

## A. Municipal Referendum under State Law

{¶30}   The Ohio Constitution, by amendment in 1912, expressly "reserves" to the citizens of each municipality in the state the powers of initiative and referendum. Ohio Constitution, Article II, Section 1f, provides:

> The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; *such powers shall be exercised in the manner now or hereafter provided by law.* (Emphasis added.)

{¶31}   The constitution limits the reserved powers to legislative action, but it does not otherwise explicitly define the substantive or procedural aspects of these reserved powers that will allow the citizens of municipalities to carry the powers into effect. *Buckeye Community Hope Found. v. Cuyahoga Falls*, 82 Ohio St.3d 539, 543-544, 697 N.E.2d 181 (1998). Instead, through the use of the emphasized language, it leaves that responsibility to other sources of "law," including state statutes or municipal charters. *See State ex rel. Bramblette v. Yordy*, 24 Ohio St.2d 147, 148-149, 265 N.E.2d 273 (1970); *Dubyak v. Kovach*, 164 Ohio St. 247, 249, 129 N.E.2d 809 (1955); *Dillon v. Cleveland,* 117 Ohio St. 258, 276, 158 N.E. 606 (1927); *Shyrock v. Zanesville*, 92 Ohio St. 375, 384, 110 N.E. 937 (1915).

{¶32}   Ohio has statutes on municipal initiatives and referenda to carry into effect the constitutional provision. *See Yordy* at 149; *Dubyak* at 249-250. Generally,

---

[2] The plaintiffs-relators first raised the argument that the Charter subjected all municipal legislation to referendum, including valid emergency ordinances, after filing the amended complaint. The parties and the trial court proceeded as though the complaint had been constructively amended to include this claim for declaratory relief. We proceed accordingly.

these provisions apply by default if a municipality has no charter or no charter provisions on the matter. Only the power of municipal referendum—the process of allowing electors to accept or reject legislation—is at issue in this appeal.

{¶33} R.C. 731.29 in pertinent part states:

> Any ordinance or other measure passed by the legislative authority of a municipal corporation shall be subject to the referendum except as provided by section 731.30 of the Revised Code. No ordinance or other measure shall go into effect until thirty days after it is filed with the mayor of a city or passed by the legislative authority in a village, except as provided by such section.

{¶34} R.C. 731.30 in pertinent part reads:

> * * * [E]mergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in such municipal corporation, shall go into immediate effect. Such emergency ordinances or measures must, upon a yea or nay vote, receive a two-thirds vote of all the members elected to the legislative authority, and the reasons for such necessity shall be set forth in one section of the ordinance or other measure.

{¶35} These statutes provide, as the common pleas court recognized in its decision, that a validly enacted emergency municipal ordinance is not subject to referendum.[3] Instead, it is immediately effective. *See* R.C. 731.29 and 731.30; *State ex rel. Webb v. Bliss*, 99 Ohio St.3d 166, 168-169, 2003-Ohio-3049, 789 N.E.2d 1102

---

[3] R.C. 731.30 additionally exempts from the operation of the referendum ordinances or measures providing for appropriation for current expenses and certain ordinances or measures for street improvements.

("R.C. 731.30 provides that emergency ordinances 'shall go into immediate effect,' thereby exempting them from referendum."). Conversely, under the statute, a municipal ordinance that is subject to referendum has a delayed effective date, which allows for the exercise of the power of referendum. *See* R.C. 731.29.

### B. Cincinnati's Charter

{¶36} The citizens of Cincinnati have adopted a charter form of government, as authorized by the Ohio Constitution, Article XVIII, Section 7 ("Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."). Section 3 of the same Article provides as follow: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with the general laws."

{¶37} Charter municipalities such as Cincinnati have the power to adopt referendum provisions that differ from the state law provisions, and these provisions will be enforced if they do not conflict with Ohio's Constitution. *See Dillon*, 117 Ohio St. 258, 158 N.E. 606, at paragraph three of the syllabus; *Buckeye Community Hope Found.*, 82 Ohio St.3d at 543-544, 697 N.E.2d 181; *see also* R.C 731.41. This includes the power to provide for referendum on emergency legislation. *See State ex rel. Julnes v. S. Euclid City Council*, 130 Ohio St.3d 6, 2011-Ohio-4485, 955 N.E.2d 363, ¶ 42; *State ex rel. Snyder v. Bd. of Elections*, 78 Ohio App. 194, 201, 69 N.E.2d 634 (6th Dist.1946).

### 1. Express Adoption of State Law on Referendum and No Express Provision for Referendum on Emergency Ordinances

{¶38}   Cincinnati's charter does not contain comprehensive provisions on initiative and referendum.   But the Charter provides in Article II, Section 3 as follows:

> The initiative and referendum powers are reserved to the people of the city on all questions which the council is authorized to control by legislative action; such powers shall be exercised in the manner provided by the laws of the state of Ohio.  Emergency ordinances upon a yea and nay vote must receive the vote of the majority of the members elected to the council, and the declaration of an emergency and the reasons for the necessity of declaring said ordinances to be emergency measures shall be set forth in one section of the ordinance, which section shall be passed only upon a yea and nay vote of two-thirds of the members elected to the council upon a separate roll call thereon.  If the emergency section fails of passage, the clerk shall strike it from the ordinance and the ordinance shall take effect at the earliest time allowed by law.

{¶39}   The plaintiffs-relators argue that the first sentence of Article II, Section 3 should be read to provide for referendum on emergency legislation.  They contend that the sentence contains "two separate and distinct provision[s]," separated by a semicolon.  Thus, they read the first clause as declaring the right of referendum on "all" municipal legislation, without any exceptions.  The second clause, they contend, indicates deference to state law for "the manner" in which that reserved right or power is to be exercised, but this deference only includes the

procedural state law provisions pertaining to the exercise of the power, and not the substantive provisions that provide the exceptions to referendum.

{¶40} The common pleas court concluded that because the Charter referred to "all" legislation and did not expressly exempt from referendum emergency ordinances, the Charter created a right of referendum as to an emergency ordinance. The court also read the language after the semicolon—"exercised in the manner provided by the laws of Ohio"—as merely incorporating the procedural methods set forth in state law for seeking a referendum. After stating that the provision was "by no means free from ambiguity," the court construed the ambiguity liberally to permit the exercise of the referendum power.

### 2. The Scope of the Power of Referendum in Cincinnati

{¶41} The interpretation of a city's charter is an issue of law. *State ex rel. Paluf v. Feneli*, 69 Ohio St.3d 138, 142, 630 N.E.2d 708 (1994). We review issues of law de novo, without deference to the trial court's decision. *See Ceccarelli v. Levin*, 127 Ohio St.3d 231, 2010-Ohio-5681, 938 N.E.2d 342, ¶ 8.

{¶42} In construing the Charter, we apply the general rules of statutory construction, as the charter does not require otherwise with respect to the issue in this case. *See, e.g., State ex rel. Comm. For the Charter Amendment v. City of Westlake*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, ¶ 28. We are mindful that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a * * * particular meaning * * * shall be construed accordingly." R.C. 1.42. As a result, we must construe the charter section as a whole and give effect to every part and sentence. *See Cincinnati v. Ohio*, 1st Dist. No. C-110680, 2012-Ohio-3162, ¶ 9.

15

{¶43} Further, we are directed by the case law that has developed specifically on interpreting charter initiative and referendum provisions. Generally, where a charter specifically adopts state-law initiative and referendum provisions and does not set forth conflicting provisions on the same matter, the state law controls. *See Nimon*, 6 Ohio St.2d 1, 215 N.E.2d 592, at paragraph five of the syllabus; *State ex rel. Ditmars v. McSweeney*, 94 Ohio St.3d 472, 477, 764 N.E.2d 971 (2002); *Citizens for a Better Beachwood v. Cuyahoga Cty. Bd. of Elections*, 62 Ohio St.3d 167, 580 N.E.2d 1063 (1991). *See also* R.C. 731.41.

{¶44} Where a charter is ambiguous concerning the right of referendum, it must be read in favor of the right of referendum. *Julnes*, 130 Ohio St.3d 6, 2011-Ohio-4485, 955 N.E.2d 363, at ¶ 43; *State ex rel. Laughlin v. James*, 115 Ohio St.3d 231, 2007-Ohio-4811, 874 N.E.2d 1145, ¶ 25. But there is no need to construe a charter provision on referendum liberally where the provision's meaning is clear. *See Ditmars* at 476.

### 3. Cincinnati's Charter is not Ambiguous

{¶45} In *Julnes*, the Ohio Supreme Court found that the charter for the city of South Euclid contained an ambiguity with respect to the citizens' right of referendum on emergency ordinances. Citing the rule that municipal referendum provisions must be liberally construed in favor of referendum, the Supreme Court determined that the emergency legislation was not excepted from the referendum requirement. *Id.* at ¶ 43. The South Euclid charter language found ambiguous in *Julnes* provided as follows:

> Ordinances providing for a tax levy or for improvements
> petitioned for by the owners of a majority of the feet front of the

16

property benefited and to be specially assessed therefore, and appropriation ordinances limited to the subject of appropriations shall not be subject to referendum, but except as otherwise provided by the Constitution or general laws of the State of Ohio, all other ordinances and resolutions, including, but not limited to, *emergency ordinances and resolutions shall be subject to referendum*; provided, however, that emergency ordinances and resolutions shall go into effect at the time indicated therein. (Emphasis added.)

*Julnes* at ¶ 38. In determining that an ambiguity existed, the court was persuaded by the fact that the charter contained a provision specifically subjecting emergency legislation to referendum, and that that provision would be rendered meaningless if the general provisions of R.C. 731.29 and 731.30, exempting emergency municipal legislation from referendum, were read into the charter provisions. *Id.* at ¶ 43.

{¶46} Unlike the charter in *Julnes*, Cincinnati's charter does not contain a specific provision subjecting emergency municipal legislation to referendum. Instead, Cincinnati's charter, consistent with the constitutional provision on the same subject, sets forth the reservation of the power of referendum and then references "state law" for the "manner to exercise" the power.[4]

{¶47} A charter is a governing instrument, like a constitution. When introducing the initiative and referendum powers of its citizenry, Cincinnati's charter uses the same sentence construction and almost the same phraseology as Ohio

---

[4] The Charter also includes a general provision that provides for the application of state laws that are not inconsistent with the Charter and not declared inoperative by ordinance of city council. Charter of the City of Cincinnati, Article II, Section 1.

Constitution, Article II, Section 1f.  And at the time Cincinnati adopted its charter, the Ohio Supreme Court in *Shyrock v. Zanesville* had read the phrase *"such powers shall be exercised in the manner,"* as found in Ohio Constitution, Article II, Section 1f, to encompass both substantive and procedural limitations on the power of municipal referendum, where those limitations were provided by law. (Emphasis added.)  *Shyrock*, 92 Ohio St. at 384, 110 N.E. 937.  The *Shyrock* court held this notwithstanding that the phrase was part of a clause in a compound sentence that was preceded by a clause reserving the initiative and referendum powers "on all questions" of municipal "legislative action."    *Id.*  The Supreme Court continues to read the compound sentence in this way. *See Taylor v. City of London,* 88 Ohio St.3d 137, 143, 723 N.E.2d 1089 (2000); *Yordy*, 24 Ohio St.2d at 148-149, 265 N.E.2d 273.

**4.  Charter Provisions Must Be Read As A Whole and in Context**

{¶48}   Importantly, charter provisions, like statutes and constitutions, must be read as a whole and in context.  *See MacDonald v. Bernard*, 1 Ohio St.3d 85, 88-89, 438 N.E.2d 410 (1982).  We are not permitted—as the common pleas court did, and Judge Dinkelacker's dissent does—to look at the first sentence and disassociate it from the context of the entire section.

{¶49}   The first sentence of Article II, Section 3 of the Charter provides that "The initiative and referendum powers are reserved to the people of the city on all questions which the council is authorized to control by legislative action; such powers shall be exercised in the manner provided by the laws of the state of Ohio." The remaining provisions of Article II, Section 3 of the Charter set forth the specific requirements for the passage of "emergency ordinances" in Cincinnati.   These provisions alter the statutory procedures.

{¶50}   The placement of these provisions immediately after the sentence allowing the exercise of the right of referendum in the manner provided by state law is a confirmation that the state-law exception for emergency legislation applies and validly enacted emergency ordinances are not subject to referendum in Cincinnati.

{¶51}   Language in Article II, Section 6 of the Charter also supports our conclusion that not all municipal legislation is subject to referendum in Cincinnati. That section addresses the procedure to be followed if the mayor vetoes legislation, and it provides in relevant part as follows:

> If six members of the council vote affirmatively to override the veto and enact the legislation, it becomes law notwithstanding the mayoral veto.  It shall be effective according to its terms upon the affirmative vote and, *if otherwise subject to referendum*, the time for referendum on the legislation shall begin to run again from that date. (Emphasis added.)

Charter of the City of Cincinnati, Article II, Section 6.

{¶52}   We must interpret the Charter within the framework of established rules of construction and to avoid an absurd result.  To that end, the only reasonable conclusion at which we can arrive, after reviewing the Charter, is that the state-law provisions on referendum are to be followed, except where the Charter sets forth specific charter provisions that otherwise control.  Because the Charter does not specifically provide for referendum on emergency legislation, the state-law provisions that preclude emergency municipal legislation from referendum apply.

{¶53}   Thus, the facts of this case are wholly distinguishable from the facts in *Julnes*.  The general rule providing for the liberal construction of municipal

referendum provisions does not apply in this case because the Charter's meaning is unequivocal and definite.[5]  *See Ditmars*, 94 Ohio St.3d at 476, 764 N.E.2d 971 (holding that there is no need to construe charter provision on initiative liberally where meaning is "unequivocal.").

### 5.  90 Years of Exempting Emergency Municipal Legislation from Referendum

{¶54}  Our reading of Article II, Section 3 of the Charter is supported by the case law in this district.  For almost 90 years, Hamilton County courts ruling on issues related to Article II, Section 3 of the Charter have interpreted that provision consistent with the city's position that the citizens of Cincinnati did not reserve the power to approve or reject emergency municipal legislation by popular vote. In *Walsh v. Cincinnati City Council*, 54 Ohio App.2d 107, 108-109, 375 N.E.2d 811 (1st Dist.1977), we recognized that the Charter precluded the right of referendum on a valid emergency ordinance, although we held that the ordinance "lack[ed] validity as an emergency enactment." *Id.* at 112.

{¶55}  The common pleas court made a similar observation in *Schultz v. Cincinnati*, 13 Ohio Op. 186,  28 Ohio Law Abs. 29, 1938 Ohio Misc. LEXIS 906, *7 (C.P.1938) ("By the adoption of [section] 2 of the ordinance [, which contains an emergency clause,] the people of the City of Cincinnati are denied the right to express their views concerning this ordinance by the referendum, for by operation of [section] 2 of the ordinance[,] it becomes immediately effective."). *See also Sentinel*

---

[5] The city attached to its appellate brief a document captioned "Report of Charter Amendment Commission."  The plaintiffs-relators contend that the city is impermissibly attempting to add to the record before the trial court.   *See, e.g., State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500, (1978), syllabus; *Steinriede v. City of Cincinnati*, 1st Dist. No. C-100289, 2011-Ohio-1480, ¶ 10. Because we find no ambiguity in the Charter language, we may not consider the "history" of the Charter.  *See* R.C. 1.49.  Therefore, we need not determine whether that document is properly before this court.

*Police Assn. v. Cincinnati*, 1st Dist. No. C-940610, 1996 Ohio App. LEXIS 1512, *12 (Apr. 17, 1996) (citing R.C. 731.30 for the proposition that valid emergency ordinances passed by Cincinnati's city council become effective immediately); *Cincinnati ex rel. Newberry v. Brush*, 1st Dist. No. C-830674, 1984 Ohio App. LEXIS 8835, *5 (Jan. 11, 1984) (stating that where city council passes an emergency ordinance, but "there was in fact no emergency or if the reasons given for such necessity are not valid reasons, the voters have an opportunity to take appropriate action in the subsequent election of their representatives.").

{¶56} We are not persuaded that Cincinnati's Charter should be read otherwise.

### C. Is Ordinance 56-2013 a Valid Emergency Ordinance?

{¶57} Having determined that the Charter excludes valid emergency ordinances from referendum, we must address the plaintiffs-relators' claim that Ordinance 56-2013 is not a valid emergency ordinance.

{¶58} Generally, judicial review concerning the validity of emergency ordinances is limited to issues such as whether the legislation received the necessary votes for passage and whether the legislation contained an emergency clause that set forth the reasons for the emergency legislation. *See State ex rel. Emrick v. Wasson*, 62 Ohio App.3d 498, 505-506, 576 N.E.2d 814 (2d Dist.1990).

{¶59} If validly enacted, "the existence of an emergency or the soundness of [the] reasons" presented for "declaring the emergency" is not within the purview of a reviewing court. *State ex rel. Fostoria v. King*, 154 Ohio St. 213, 221, 94 N.E.2d 697 (1950). Rather, those issues are "subject to review only by the voters at such a subsequent election of their representatives." *Id.*; *Bliss*, 99 Ohio St.3d 166, 2003-

21

Ohio-3049, 789 N.E.2d 1102, at ¶ 12, citing *Jurcisin v. Cuyahoga Cty. Bd. of Elections*, 35 Ohio St.3d 137, 519 N.E.2d 347 (1988), paragraph three of the syllabus; *Brush*, 1st Dist. No. C-830674, 1984 Ohio App. LEXIS 8835, at *4-5.

### 1. Did the Emergency Ordinance Pass with Sufficient Votes?

{¶60}   The ordinance at issue first passed with a simple majority, by a vote of 5 to 4.  At that time, it did not contain an emergency clause.  Council then voted on whether to include an emergency clause in the ordinance, and that section, which passed by a vote of 6 to 3, received two-thirds of the vote.

{¶61}   The plaintiffs-relators contend that council's method of passing the legislation did not comply with the requirement in R.C. 731.30 that "emergency ordinances or measures must * * * receive a two-thirds vote" because it is the entire ordinance, not just the emergency clause, that must receive the two-thirds vote.  The city counters that the Charter was amended in 1994 to provide for the procedure used by council.

{¶62}   Contrary to R.C. 731.30, the Charter, in Article II, Section 3, provides the following:

> Emergency ordinances upon a yea and nay vote must receive the vote of a majority of the members elected to council, and the declaration of an emergency and the reasons for the necessity of declaring said ordinances to be emergency measures shall be set forth in one section of the ordinance, which section shall be passed only upon a yea and nay vote of two-thirds of the members elected to the council upon a separate roll call thereon.

As we have previously held, the Charter alters in part the statutory procedures for passing emergency ordinances by allowing for a separate roll-call vote on the emergency clause. A 1994 amendment to the Charter brought additional changes. This amendment provides that emergency ordinances must pass by a majority of council, and that the separate roll-call vote on the emergency clause must produce affirmative votes from two-thirds of council members.

{¶63}   We hold that city council validly enacted Ordinance 56-2013 when five members voted in favor of the ordinance and six members voted in favor of the emergency clause. Accordingly, we reject the plaintiffs-relators' claim that the emergency ordinance is invalid for this reason.

## 2.  Is the Language used in the Emergency Section Defective?

{¶64}   The plaintiffs-relators also challenged the validity of the ordinance as emergency legislation on the grounds that the emergency clause does not contain language identical to the language in R.C. 731.30, which limits emergency ordinances to those that are "necessary for the immediate preservation of the public peace, health, or safety in [the] municipal corporation."

{¶65}   The emergency clause at issue, found in section 5 of the ordinance, provides the following:

> That this ordinance shall be an emergency measure necessary for the preservation of the public peace, health, safety and general welfare and shall, subject to the terms of Article II, Section 6 of the Charter, be effective immediately. The reason for the emergency is the immediate need to implement the budgetary measures contemplated during the December 2012 City of Cincinnati budget

determinations in order to avoid significant personnel layoffs and budget cuts and resulting reductions in City services to Cincinnati residents related to the City's General Fund, which administrative actions would be needed to balance the City's FY 2013 and 2014 budgets in the absence of revenue generated by implementation of the modernization of the City of Cincinnati parking system as described herein.

{¶66} The city again argues that the Charter, which sets forth specific requirements for the content of the emergency clause that are different from those in R.C. 731.30, controls. Article II, Section 3 of the Charter requires only that "the declaration of an emergency and the reasons for the necessity of declaring said ordinances to be emergency measures shall be set forth in one section of the ordinance." The city further contends that the plaintiffs-relators' challenge is unfounded, because even when applying R.C. 731.30, courts have invalidated emergency clauses only where the language providing the reason for the emergency is purely illusory, conclusory, or tautological. *See Laughlin*, 115 Ohio St.3d 231, 2007-Ohio-4811, 874 N.E.2d 1145, at ¶ 28. And the Ohio Supreme Court has held an emergency clause is not invalid merely because it does not include a conclusory statement that its enactment is an "immediate" necessity, *id.* at ¶ 32, or because council has used it with the intent to avoid a referendum on the issue. *Id.* at ¶ 37.

{¶67} Where city council included the reason for declaring the emergency in a separate section of the ordinance, our review is limited to whether council's reason for the emergency, as set forth in the ordinance, is merely conclusory, tautological, or illusory. *Laughlin* at ¶ 42. Section 5 of the ordinance contains a description of

specific, concrete, and significant consequences that will flow from the inability to immediately implement the ordinance. The plaintiffs-relators do not argue that the reason for the necessity is conclusory, tautological, or illusory, and in light of the reason given, we are unable to determine that it is.

{¶68} Therefore, we hold that city council satisfied the requirement of setting forth a real, detailed reason to justify the need for the emergency action in accordance with the Charter, and we reject the plaintiffs-relators' argument challenging the clause as insufficient.

### D. Does the Ordinance Violate Article II, Section 7?

{¶69} The plaintiffs-relators' final argument, presented in support of declaratory and injunctive relief, centered on Article II, Section 7 of the Charter. This provision in its entirety provides as follows:

> The existing departments, divisions and boards of the city government are continued unless changed by the provisions of this charter or by ordinance of the council. Within six months after the adoption of this charter, the council shall by ordinance adopt an administrative code providing for a complete plan of administrative organization of the city government. Thereafter, except as established by the provisions of this charter, the council may change, abolish, combine and re-arrange the departments, divisions and boards of the city government provided for in said administrative code, but an ordinance creating, combining, abolishing or decreasing the powers of any department, division or

board, shall require a vote of three-fourths of the members elected

to council, except the ordinance adopting an administrative code.

{¶70} According to the plaintiffs-relators, the three-fourths vote requirement of Article II, Section 7 applied because the ordinance has the effect of abolishing or decreasing the powers of the parking-facilities division of the Department of Enterprise Services. Because city council did not approve Ordinance No. 56-2013 with the seven votes that Article II, Section 7 required, plaintiffs-relators argue that the ordinance was void.

{¶71} The city argued below that the voting requirement of Article II, Section 7, applied only to ordinances affecting "departments, divisions and boards of the city provided for in the administrative code." The section did not apply to Ordinance No. 56-2013 because the city's parking operations were not in the city's administrative code, as demonstrated by exhibit B of the stipulated exhibits submitted to the common pleas court. We agree.

{¶72} Because the city's parking operations were not a part of the "departments, divisions, [or] boards" arranged in the city's administrative code, the requirements of Article II, Section 7 did not apply as a matter of law. Accordingly, the ordinance was not "void in its entirety" for failure to meet the vote requirements of that section of the Charter.

{¶73} Consequently, we sustain the city's second assignment of error.

### IV. Conclusion

{¶74} We reverse the trial court's judgment in favor of the plaintiffs-relators. We remand the matter to the trial court with instructions to enter judgment in favor of the city, in accordance with the law and this opinion.

Judgment accordingly.

**DEWINE, J.,** concurs in part and dissents in part.
**DINKELACKER, J.**, concurs in part and dissents in part.

**DEWINE, J.,** concurring in part and dissenting in part.

{¶75}    I join in parts II.A, II.C, III.B and III.C, and with the result reached in Part  III.  I write separately because I employ a somewhat different analysis to reach the conclusion that the Cincinnati City Charter incorporates provisions of state law that provide that emergency ordinances are not subject to referendum.  I respectfully dissent from the majority's conclusion in II.B.

## I. Interpretation of the Charter

{¶76}    We are tasked with interpreting a single sentence of the Cincinnati Charter:

> The initiative and referendum powers are hereby reserved to the people of the City on all questions which the City is authorized to control by legislative action; such powers shall be exercised in the manner hereafter provided by law.

Charter of the City of Cincinnati,  Article II, Section 3.

{¶77}    The question before us is, does "all" in the first clause include emergency legislation; or does the second clause incorporate provisions of state law removing the right to referendum where legislation is passed as an emergency?

{¶78}    If we were to interpret this sentence in a vacuum, it would be an easy enough matter to determine that "all" means all and that the right to referendum is absolute.  We do not interpret in a vacuum, however.  To the contrary, we are constrained to interpret against a backdrop of precedent that suggests that city

council may indeed thwart the citizens' right to referendum by appending an "emergency" clause to a piece of legislation. This conclusion, I believe, is mandated by the interpretation of nearly-identical language in the Ohio Constitution provided by the Ohio Supreme Court, by the consistent reading given to the city Charter since its inception, and by the familiar rule of statutory construction that requires us to give effect to all of the Charter's provisions.

### A. *Shyrock* and a Backdrop of Ohio Supreme Court Precedent Interpreting a Parallel Provision of the Ohio Constitution

{¶79}     The Ohio Supreme Court interpreted a nearly-identical provision of the Ohio Constitution in *Shyrock v. Zanesville*, 92 Ohio St. 375, 110 N.E. 937 (1915). That provision provided:

> The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law.

*Id.* at 380, citing Ohio Constitution, Article II, Section 1f.

{¶80}     The *Shyrock* court found that despite the seemingly absolute reservation of the referendum power on "all" questions, the second clause limited that power in the case of emergency legislation. *Id.* at 384-385. The phrase "now or hereafter provided by law," the court concluded, incorporated a precursor to R.C. 731.30, which provided that emergency ordinances go into immediate effect. *Id.* at 385. Thus, *Shyrock* tells us that even though a governing document says that it reserves the referendum power on "all questions," the power may still be limited in the case of emergency ordinances. It also tells us that the phrase "shall be exercised

28

in the manner provided by law" is not merely procedural, but encompasses substantive limitations, including those providing for the immediate effect of emergency legislation. *Id.*

{¶81} As Judge Dinkelacker's dissent points out, *Shyrock* dealt with the construction of the Ohio constitution, while our case deals with the city Charter. But there is nothing about the two different documents that would suggest that the same words mean one thing in the Ohio Constitution and something altogether different in the Charter. To the contrary, the Charter provision was enacted barely a decade after the decision in *Shyrock*, and we must presume that the language chosen by the drafters of the Charter was informed by the understanding expressed in *Shyrock*.

{¶82} Further, the Ohio Supreme Court has not backed away from its limiting interpretation:

> A superficial examination of that [Ohio Constitution, Article II, Section 1f] might lead to the conclusion that referendum may not be denied as to any municipal legislative action, the section reserving to the people such power on 'all questions which such municipalities may * * * control by legislative action * * *.' Such a conclusion, however, uniformly has been rejected by this court.

*State ex rel. Bramblette v. Yordy*, 24 Ohio St.2d 147, 149, 265 N.E.2d 273 (1970), citing *Shyrock, supra.*

{¶83} As recently as *Taylor v. London*, 88 Ohio St.3d 137, 143, 723 N.E.2d 1089 (2000), the Supreme Court reaffirmed that R.C. 721.29 and 731.30, which preclude referendum on validly enacted emergency legislation, do not contravene the right of referendum on "all questions" provided by the Ohio Constitution.

{¶84} Thus, while plaintiffs advance an alluring argument, their reading of the Charter language is impossible to reconcile with the Ohio Supreme Court's decisions in cases such as *Shyrock* and *Taylor*.

### B. The Charter Provision Must Be Read as Whole

{¶85} As the lead opinion points out, the reading advanced by plaintiffs and Judge Dinkelacker's dissent would require us to ignore swaths of the city Charter. The last two sentences of Article II, Section 3 of the Charter provide for a separate vote on an emergency clause, and provide that if the emergency clause fails, the legislation shall go into effect "at the earliest time allowed for by law." Such a provision only makes sense if emergency legislation goes into effect immediately. A referendum suspends a legislative action <u>before</u> it goes into effect. *See Ohio Valley Elec. Ry. Co. v. Hagerty*, 14 Ohio App. 398 (4th Dist.1921). Once the legislation is in effect, there can be no referendum. Thus, by recognizing that council may pass emergency legislation that has immediate effect, the Charter recognizes that council may pass emergency legislation that is not subject to referendum.

{¶86} The interpretation advanced by Judge Dinkelacker's dissent would read these last two sentences of Article II, Section 3 out of the City Charter. We are bound, however, to interpret the Charter if at all possible to give effect to all of its provisions, or in the Latin, *"verba cum effectu accipienda."* Scalia and Garner, *Reading Law: The Interpretation of Legal Texts*, 174-179 (2012). The only way to do so is to assume that the Charter adopts provisions of state law allowing a municipality to adopt emergency legislation that is not subject to referendum.

### C. Consistent Understanding of the Charter Language

{¶87}   It is also relevant to the analysis that it has been understood for nearly 90 years that the Charter language allows council to pass emergency legislation that is not subject to referendum.

{¶88}   This was certainly the understanding of the drafters of the Charter. The Report of the Charter Amendment Commission, submitted just two weeks before council placed the Charter on the ballot, specifically noted that the language of Article II, Section 3 tracked the parallel provisions of the State Constitution.  The provision "is practically an adaption of the [Ohio] constitutional provision preserving the initiative and referendum," explained the Commission.   Report of Charter Amendment Commission, August 2, 1926.[6]

{¶89}   Further, as the lead opinion points out, Hamilton County courts have assumed for nearly 90 years that council, may, in fact, pass emergency legislation that is not subject to referendum.  Judge Dinkelacker's dissent notes that none of the string of cases cited confronted the issue directly, but rather simply assumed the existence of a power to pass emergency legislation that was not subject to referendum. But, the failure of litigants to raise the issue says something too; it suggests that the understanding  that council possessed the power to enact emergency legislation was so broadly held that even litigants challenging council's decision to pass emergency legislation not subject to referendum did not bother to attack council's power to do

---

[6] Reference to the Report of the Commission is appropriate not because the Charter provision is ambiguous but because it demonstrates the contemporaneous understanding of the Charter language at the time it was adopted.  *See District of Columbia v. Heller,* 554 U.S. 570, 577-610, 128 S.Ct., 2783, 171 L.Ed.2d 637 (2008); *see also* Jeffrey S. Sutton, *The Role of History in Judging Disputes About the Meaning of the Constitution,* 41 Tex. Tech. L. Rev. 1173 (2009).

so.  Quite simply, until this case, council's power to pass emergency legislation that is not subject to referendum has been assumed.

{¶90}     This long held understanding is not dispositive, but it does inform our construction of the Charter provision.  We are cautioned that "a fundamental consideration[] of fairness recognized in every legal system is that settled expectations honestly arrived at with respect to substantial interests ought not to be defeated." Singer, *Statutes and Statutory Construction*, Section 41:5 at 417 (6th Ed.2001).  Here, settled expectations support the construction advanced by the city.

### D. Other Considerations

{¶91}     Of course, where a charter provision is ambiguous, we construe the provision liberally in favor of a referendum.  But *Shyrock* and its progeny tell us the words at issue here are not ambiguous; rather they tell us exactly what the pertinent words mean.  And plainly, *Julnes,* which dealt with a charter provision that expressly provided for a right to referendum on emergency legislation, has no application to the case at bar where the Charter is silent on referendum of emergency legislation and adopts state law.  Thus I believe that we are constrained to reverse the trial court.

{¶92}     Our decision today is not an endorsement of a process that allows six members of council to avoid the referendum power on even the most important of questions by labeling a piece of legislation as an emergency.  It is simply a straightforward application of the language of the Charter based upon the precedent we must follow.   If the citizens of Cincinnati wish to restrict use of the emergency label to avoid referendum, the remedy is to either amend the Charter to strengthen the referendum power or to elect councilmembers less willing to append "emergency" clauses to legislation.

## II. Statutory Taxpayer Action

{¶93}    The majority concludes that this action could not be properly maintained as a statutory taxpayer action because plaintiffs failed to pay a $325 filing fee that the court said could serve as security, and that, therefore, the court lacked jurisdiction over the statutory taxpayer claim.

{¶94}    It is not clear from my reading of the record, however, that the filing fee was not paid, and the issue was not litigated below.  We need not reach the issue because of our disposition of the other issues in the case.   But if we had decided the merits of this case differently, and did need to reach the issue, I would remand the issue to the trial court.  Rather than this court find that this action could not be maintained as a statutory taxpayer action based upon an incomplete record, I would allow the trial court to determine in the first instance whether plaintiffs complied with the trial court's order regarding the posting of security.

**DINKELACKER, J.,** concurring in part and dissenting in part.

{¶95}    While I agree with the lead opinion on all aspects of the issues of jurisdiction and standing, I respectfully dissent from its interpretation of Article II, Section 3 of the city charter.  In my view, the charter language is ambiguous and, therefore, we must liberally construe it in favor of permitting the people of Cincinnati to exercise their power of referendum.

{¶96}    The constitutional right of citizens to referendum is "of paramount importance."  Courts must "liberally construe municipal referendum powers so as to permit rather than preclude their exercise by the people."  *State ex rel. Laughlin v. James*, 115 Ohio St.3d 231, 2007-Ohio-4811, 874 N.E.2d 1145, ¶ 25.  Those powers

should be promoted rather than prevented or obstructed. *State ex rel. King v. Portsmouth*, 27 Ohio St.3d 1, 4, 497 N.E.2d 1126 (1986).

{¶97} The lead opinion, in holding that the emergency legislation is exempt from the power of referendum, relies upon several Ohio Supreme Court cases that I do not believe apply in this case, primarily because they rely heavily upon state law, rather than the language of a city charter. *See, e.g., Taylor v. London*, 88 Ohio St.3d 137, 723 N.E.2d 1089 (2000); *State ex rel. Bramblette v. Yordy*, 24 Ohio St.2d 147, 265 N.E.2d 273 (1970); *Shyrock v. Zanesville*, 92 Ohio St. 375, 110 N.E. 937 (1915). Instead, I find more the recent case of *State ex rel. Julnes v. S. Euclid City Council*, 130 Ohio St.3d 6, 2011-Ohio-4485, 955 N.E.2d 363, to be persuasive.

{¶98} In that case, a South Euclid ordinance stated that certain ordinances were not subject to referendum, "but except as otherwise provided by the Constitution or general laws of the State of Ohio, all other ordinances and resolutions, including but not limited to, emergency ordinances and resolutions shall be subject to referendum; provided however that emergency ordinances and resolutions shall go into effect at the time indicated therein." *Id.* at ¶ 38. The Supreme Court stated that "the general rule in South Euclid that emergency legislation is subject to referendum does not apply when 'otherwise provided by the Constitution or general laws of the State of Ohio.' " *Id.* at ¶ 39.

{¶99} The court went on to state that pursuant to R.C. 731.41, the provisions of R.C. 731.28 through 731.41 do not apply to any municipal corporation which adopts its own charter containing an initiative and referendum provision for its own ordinances and legislative measures. It noted that South Euclid had adopted its own charter, which expressly provided that, with a few specified exceptions, all other ordinances, resolutions, including but not limited to, emergency ordinances

and resolutions shall be subject to referendum. *Id.* at ¶ 42. Therefore, R.C. 731.29 and 731.30 did not exempt the ordinances in question from referendum, in light of the specific charter provision subjecting it to referendum.

{¶100} Though the language in South Euclid's charter differs somewhat from the language of Cincinnati's Charter, I do not find that difference to be dispositive. The lead opinion relies heavily on R.C. 731.29 and 731.30. But as the Supreme Court held in *Julnes*, R.C. 731.41 specifically provides that those sections "do not apply to any municipal corporation which adopts its own charter containing an initiative and referendum provision for its own ordinances and other legislative measures." The plain language of R.C. 731.41 unequivocally applies here. R.C. 731.29 and 731.30 are not applicable in this case.

{¶101} The city of Cincinnati is a charter municipality that derives its powers of local self-government from the Ohio Constitution. Its power to enact legislation is conferred by the city Charter, not the Ohio Revised Code. *State ex rel. Phillips Supply Co. v. Cincinnati*, 1st Dist. No. C-120168, 2012-Ohio-6096, ¶ 53. "[A] municipality which has adopted a comprehensive charter is governed by the terms of the charter, and statutory provisions relating to subjects covered by the charter are inapplicable." *State ex rel. Davis Invest. Co. v. Columbus*, 175 Ohio St. 337, 341, 194 N.E.2d 859 (1963).

{¶102} As noted by the common pleas court, in Article II, Section 3 of the charter, "the citizens of Cincinnati have reserved the initiative and referendum power to themselves on all questions which the Council is authorized to control by legislative action. Those powers shall be *exercised* in the *manner* provided by the laws of the state of Ohio." (Emphasis sic.) The remaining language in that section

35

does not clearly and unambiguously indicate that the citizens of Cincinnati chose to limit their referendum rights in the case of emergency ordinances.

{¶103}   In regard to the first sentence of Article II, Section 3, I agree with the common pleas court when it stated:

> The City Charter does not specifically exempt emergency legislation from the powers reserved to the people.  The Charter language is clear that it refers to all legislation passed by City Counsel with no exceptions.  If the people of Cincinnati had intended to exempt emergency legislation from their referendum powers, they could have done so when adopting Article II, Section 3 of the City Charter.

{¶104}   The second sentence of Article II, Section 3 provides that the referendum powers are to be exercised in the manner provided by the state of Ohio. It is this sentence that causes ambiguity.  Since it is ambiguous, it must be interpreted in favor of allowing the people to exercise their power of referendum. The common pleas court's interpretation does just that, while still giving meaning to the provision as a whole.  *See Boley v. Goodyear Tire & Rubber Co.*, 125 Ohio St.3d 510, 2010-Ohio-2550, 929 N.E.2d 448, ¶ 20-21; *Cincinnati v. Ohio*, 1st Dist. No. C-110681, 2012-Ohio-3162, ¶ 9.

{¶105}   The lead opinion's interpretation does not give effect to the whole and is somewhat contradictory.  In one paragraph, it states that "the Charter does not specifically provide for referendum on emergency legislation."  In the next, it states that "the Charter's meaning is unequivocal and definite."  It cannot be both.  I agree with the trial court when it stated that "[t]he City Charter's reference to Ohio

law applies [to] the procedures to be followed in *exercising* the people's right to initiative and referendum; it places no restraint or limitation on that right."

{¶106} If the city had intended for emergency legislation to be a limit of the people's unfettered right to referendum, it could simply have said so in the Charter. It clearly did not. Courts have a duty to give effect to all of the words used in a statute but they should not insert words that are not used. *Bernardini v. Bd. of Edn.*, 58 Ohio St.2d 1, 4, 387 N.E.2d 1222 (1979); *Cincinnati* at ¶ 9.

{¶107} Consequently, as the common pleas court stated: "As a matter of statutory construction, the Court is not permitted to add language exempting emergency legislation from referendum where no such language exists in the Charter provision." As this court very recently held in *Brookville Equip. Corp. v. Cincinnati,* 1st Dist. No. C-120434, 2012-Ohio-3648, ¶ 20: "Because council chose not to include language in the ordinance, a court will not add that language when undertaking an interpretation of such ordinance." The same rules of construction apply to the city Charter.

{¶108} I do not find persuasive the city's argument that historically courts, including this one, have interpreted Article II, Section 3 as providing that the power of referendum does not apply to emergency ordinances. None of those cases addressed the specific issue raised in this case, and this court never discussed it directly in those cases.

{¶109} In this case, the city freely admits that it is trying to circumvent its citizens' constitutional right to exercise the power of referendum. But, without a clear directive from the city Charter, that it cannot do. If we adopt the city's interpretation and add the language that would obviate any ambiguity, then this court, i.e., the judicial branch of government, would be performing the function of

the legislative branch and legislating by judicial fiat. The Ohio Constitution vests legislative bodies, "not the courts, with legislative powers of government. Our role, in the exercise of the judicial power granted to us by the Constitution is to interpret and apply the law enacted by the [legislature], not to rewrite it." *Houdek v. Thyssenkrupp Materials N.A., Inc.*, 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, ¶ 29. Consequently, I would affirm the common pleas court's decision granting a permanent injunction enjoining the city from implementing Ordinance No. 56-2013.

Please note:

The court has rendered its own entry on the date of the release of this opinion.